Nickolaus MACH,

v.

The PENNSYLVANIA RAILROAD COM-
PANY, a Corporation, Appellant.

No. 14171.

United States Court of Appeals
Third Circuit.

Argued March 22, 1963.

Decided May 15, 1963.

Hubert I. Teitelbaum, Pittsburgh, Pa., for appellant.

Hymen Schlesinger, Pittsburgh, Pa. (Louis C. Glasso, Pittsburgh, Pa., on the brief), for appellee.

Before HASTIE, GANEY and SMITH, Circuit Judges.

HASTIE, Circuit Judge.

Suing under the Jones Act, 46 U.S. C. § 688, Nickolaus Mach has recovered a $48,000 judgment from his employer, Pennsylvania Railroad, for personal injuries incurred during the course of his employment. The principal question on this appeal is whether the defendant's motions for directed verdict or a new trial, which the court overruled, should have been granted on the ground that the evidence submitted to the jury, under a charge of which no complaint is made here, did not justify findings that plaintiff was employed as a "seaman" at the time of his injury and that the injury was caused by defendant's negligence.

The evidence was sketchy, but it did show this much. Plaintiff was employed as a bargeman at defendant's dock on the Ohio River at Conway, Pennsylvania. At this dock, coal is transferred from river barges to railroad cars. Lacking means of self-propulsion, the loaded barges arrive under tow at a mooring area. There the towing vessel releases its barges, and bargemen, employed by the railroad, take over the handling of the barges. The bargemen first moor them not far from the unloading point. Then, when the time arrives to unload a particular barge, cables, extending from the barge to the dock, are used to maneuver the vessel downstream along the dock until it is in position under the unloading crane. After the unloading, the bargemen again use cables to maneuver the empty barge to a mooring place downstream and tie it to other moored barges. In these maneuvers, the bargemen ride the barges and secure or pay out cable as may be required. In addition to maneuvering and securing the barges, the bargemen also place lights on the vessels and pump water from them as necessary. In brief, all

the handling and attending of barges, from the time a tow boat releases its flotilla, through the unloading, until the time when the empty barges are towed away, is done by the bargemen. The bargemen also have duties ashore in connection with the movement of railroad cars to and from the place where the crane loads them with coal from barges. The testimony as to the portion of an eight hour work day which a bargeman normally spends in handling barges ranges considerably, from an extreme of less than one hour to as much as five hours.

The accident in question occurred when the plaintiff and others were moving a loaded barge into position for unloading. Plaintiff fastened his end of a spacer cable to an "eye" at one end of the vessel, while another bargeman performed a similar operation at the other. Both men then moved toward the midship area, walking along the gunwale. As they were walking, the spacer cable parted with a noise and a section of it struck plaintiff so violently that he was thrown into the air and landed unconscious in a barge. This is the injury for which he sues.

■ There was testimony that a spacer cable is controlled from the dock by a power winch operated by the defendant's crane operator, and that the normal operating procedure is for the crane operator to await a bargeman's signal before tightening the cable to draw the barge along the dock. The only testimony of what happened in this case is that the bargemen did not give the signal, but as they walked along the gunwale the cable snapped while under so much tension that the lash of a released section knocked the plaintiff into the air. In these circumstances we think it reasonable for a jury to infer either that the cable was inadequate for the purpose of pulling the barge along the dock, or that the crane operator, without waiting for the bargeman's signal, so operated the winch as to place undue strain upon the cable. Indeed, no al-ternative inference, under which the defendant would not be at fault, is suggested by anything in the record. Thus, negligence was a jury question, and there was no error in its handling or disposition.

■ It remains to consider whether the court erred in refusing to rule as a matter of law that the plaintiff was not a "seaman" within the meaning of the Jones Act. The remedy provided by that statute is made available to "[a]ny seaman who shall suffer personal injury in the course of his employment". 46 U.S.C. § 688. It is now established, in the light of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50, that the conception of "seaman" entitled to the benefit of the Jones Act is restricted "to the members of the crew of a vessel plying in navigable waters". Swanson v. Marra Bros., Inc., 1946, 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L.Ed. 1045. In this case there is no question but that the barge was a vessel in navigation. Thus, we must inquire only whether the facts justified the jury's conclusion that the plaintiff was a member of the barge crew. Recent cases have gone very far in leaving this issue to the jury where the similarity of the status and shipboard assignment of an injured workman to the status and ordinary service of a member of a ship's company has been very slight. Butler v. Whiteman, 1958, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754; Senko v. LaCrosse Dredging Corp., 1957, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404; Gianfala v. Texas Co., 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775, reversing 5th Cir., 222 F.2d 382. Here, in contrast, there is a very obvious and substantial basis for finding that the plaintiff was a member of the crew. The work of causing a boat to move in navigable water is the most fundamental and characteristic function of a ship's crew. From the release of loaded barges from their tow until the departure of empty barges under tow, all of the ship's service which a barge required was per-

formed by bargemen who took the place of whatever crew handled them during their journeys up and down the river. We think this showing of the injured man's status and duties as a bargeman at the time of his shipboard injury was a sufficient basis for finding that he was a member of the crew.

■ In attempting to avoid this conclusion, appellant places principal reliance upon our decision in Zientek v. Reading Co., 3 Cir., 1955, 220 F.2d 183, cert. denied, 350 U.S. 846, 76 S.Ct. 55, 100 L.Ed. 754. In that case, decided before the above cited Supreme Court cases, the injured workman was a railroad brakeman, performing the normal functions of a brakeman in moving box cars along land-borne rails, which extended to the edge of the dock, and thence over contiguous rails onto a river-borne car float. We concluded that the very transient performance of a railroad brakeman's duties on shipboard was insufficient to warrant a characterization of the workman as a member of the crew. But for purposes of nautical characterization we think there is a significant difference between maneuvering a railborne freight car onto a vessel and maneuvering a water-borne vessel along a dock. The duration of service for and upon a vessel may determine whether shipboard work which is not normally performed by a ship's company makes the worker a crewman, but lack of long continued attachment to the vessel cannot, as a matter of law, serve to deny seaman's status under the Jones Act to an employee who is injured while assigned to and performing normal crew service. Cf. Weiss v. Central R. R., 2d Cir. 1956, 235 F.2d 309. Moreover, to the extent that duration of assignment to ship's service may be significant, the jury was entitled to consider that the bargemen were responsible for the handling and care of barges throughout their stay at the port. In brief, the evidence of plaintiff's shipboard assignment and service and his actual engagement in the navigation of the barge at the time of injury provided ample basis for a finding that he was a seaman within the meaning of the Jones Act.

■■ A final point requires no extended discussion. In the presence of the jury the judge indicated his view that there was evidence which, if believed, would make plaintiff a seaman. But the court also explained that it would be for the jury to decide this question. While a judge should exercise caution in expressing opinions upon issues to be decided by the jury, we are satisfied that the remark made in this case did not constitute reversible error.

The judgment will be affirmed.