The TRAVELERS INSURANCE
COMPANY, Plaintiff,

v.

Raymond F. BELAIR, Deputy Commissioner, United States Department of Labor, Defendant, and Joseph Melanson, Intervener.

Civ. A. No. 68–193–G.

United States District Court
D. Massachusetts.

Sept. 18, 1968.

See also D.C., 284 F.Supp. 168.

**222**

Blair Perry, Boston, Mass., Hale & Dorr, Boston, Mass., of counsel, for plaintiff.

Paul F. Markham, U. S. Atty., Edward J. Lee, Asst. U. S. Atty., Boston, Mass., for Belair.

Jules Angoff, Boston, Mass., for Intervener, Melanson.

## MEMORANDUM OF DECISION

GARRITY, District Judge.

Plaintiff Travelers Insurance Company initiated this action under 33 U.S.C. § 921(b) to enjoin enforcement of a compensation order rendered by defendant Raymond F. Belair, Deputy Commissioner, Bureau of Employees' Compensation, U. S. Department of Labor, in favor of Joseph E. Melanson, a former employee of the McKie Lighter Company (McKie) of Boston, Massachusetts. Melanson intervened in the action under Fed.R. Civ.P. 24(b) to protect his award, and Travelers thereupon asserted against him a counterclaim pursuant to Fed.R.Civ.P. 13(e) for sums it has already paid on account of his injuries.

Melanson's claim arose under 33 U.S.C. §§ 901–950, the "Longshoremen's and Harbor Workers' Compensation Act" (LHWCA). On January 5, 1960 he had been engaged in carpentry work on Spectacle Island, in Boston Harbor, as an employee of McKie. At the end of the day, while traveling back to the McKie dock facilities in its workboat "Louise", Melanson, who was piloting the vessel, sustained severe head injuries in trying to back out from under a bridge encountered on the route.

Travelers asserts three grounds for setting aside the award. The first is that the Deputy Commissioner erred in finding that Melanson's claim was timely filed under 33 U.S.C. § 913(a). Second, Travelers argues that the record developed at the compensation hearing makes it clear as a matter of law that Melanson was "a master or member of a crew" and that therefore he is excluded from the coverage of the LHWCA by 33 U.S.C. §§ 902(3) and 903(a) (1). Third, it is contended that even if the Deputy Commissioner were free to make a finding that Melanson was not "a master or member of a crew," he failed to do so. These issues are dealt with in the same sequence.

*Timeliness of Notice*

33 U.S.C. § 913(a) provides in relevant part that—

The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the in-

jury * * * except that if payment of *compensation* has been made without an award on account of such injury * * * a claim may be filed within one year after the date of the last payment. [Emphasis added.]

Paragraph 3 of the Deputy Commissioner's "Findings of Fact" expressly states that "claim was filed July 24, 1962" and that "last payment of compensation under the [LHWCA] was made June 26, 1962." If correct, this finding would render Melanson's filing of his claim timely under the statutory provision set out above, for it would have occurred within a year of the last payment, although more than a year after the injury.

However, Travelers notes that "compensation," for purposes of the LHWCA, is defined in 33 U.S.C. § 902(12) as "the money allowance payable to an employee or to his dependents *as provided for in this chapter.*" (Emphasis added.) The payments it made to Melanson between January 6, 1960 and June 26, 1962, claims Travelers, were not "as provided for" by the LHWCA, because they were not obligatory.[1] Rather they were disbursed pursuant to a "Voluntary Compensation" clause in McKie's insurance policy with Travelers, which provided for automatic payments to an injured employee in "an amount equal to the compensation * * * which would have been payable under [the LHWCA] had the injured employee and the insured been subject to such law * * *."

The issue thus raised is semantic, hinging on a construction of the words "as provided for in this chapter", and is somewhat elusive. Travelers cites no authority for its interpretation and advances no arguments of policy in its favor. This court has found only one case squarely in point, Great Lakes Dredge & Dock Co. v. Brown, D.C.Ill., 1930, 47 F.2d 265. There the court held that payments erroneously made under the Illinois Workmen's Compensation Act were "compensation" under the LHWCA and sufficed to toll the one-year period of limitations provided for in 33 U.S.C. § 913(a). The court said, at p. 266, "Plaintiff was under a liability to Daniel Szkraban. Any payments which were made must have been made in view of that liability." The court assumed that any payments made were not gratuitous, but were incontestably related to the liability of the employer under the LHWCA.

There is also collateral authority for the proposition that various kinds of "voluntary" payments by employers are "compensation" within the meaning of the LHWCA. Thus, several cases have construed 33 U.S.C. § 914(k)[2] to give credit to an employer for "advance payments of compensation," even where they appear not to have been denominated as such, and to have been wholly gratuitous. E. g., McCabe Inspection Service, Inc. v. Willard, 2 Cir., 1957, 240 F.2d 942; Lawson v. Standard Dredging Co., 5 Cir., 1943, 134 F.2d 771.

The court therefore concludes that the "voluntary" payments made by Travelers, for which it could later claim credit under 33 U.S.C. § 914(k), are "compensation" within the meaning of 33 U.S.C. § 913(a), because "provided for" by the LHWCA, as that phrase is used in 33 U.S.C. § 902(12).

---

1. It is true that McKie was not required to make payments to Melanson at the time the insurer did so, for it had filed a notice of intent to controvert any claim arising under the LHWCA, and according to 33 U.S.C. § 914(e) such an action immunizes an employer from any penalty for failure to make payments until a compensation order is issued after a hearing.

2. This subsection provides, in its entirety, "If the employer has made advance payments of *compensation*, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due." [Emphasis added.]

### Melanson's Status as a Matter of Law

The record of the hearing before the Deputy Commissioner is relatively free from dispute in regard to the facts bearing on Melanson's occupational status. Regarding McKie's business, its President, F. F. Farrell, testified that "Basically the McKie Lighter Company does construction work, docks, piers, etc., and we put in submarine cables for the Edison and Telephone Company." (Tr. I–51). Melanson was a member of the "Dock Builders and Carpenters Union" (Tr. II–32), and Farrell testified as follows in regard to Melanson's duties (Tr. I–62):

Q. At any rate, he had an official classification of carpenter-foreman with your firm? That was the classification?

A. Definitely, that was what he was hired as.

Q. And he did, in the past, some diving work for your diving firm?

A. Yes, Joseph Melanson was a diver.

The workboat "Louise", on which Melanson injured himself, was described as forty feet in length, without cooking or sleeping facilities, and used chiefly to transport men, and perhaps some tools or materials, to island or harbor job sites. (Tr. I–56, 57, 63, 64). Farrell summed it up in these words (Tr. I–63):

"May I say this, Mr. Commissioner: It is the same as our pickup truck down at the yard. If someone has an errand or something to do, and they have three or four men to go down to the island as in this case here, there wouldn't be any definite orders, but they would just take the boat and go down to the island."

Travelers contends, first, that it is a question of law, to be decided by this court, whether the facts just outlined suffice to make Melanson a "crew" member; and, second, that this court must find that the Deputy Commissioner erred in concluding that Melanson was not a "master or member of a crew" in relation to the "Louise."

The first of Travelers's positions is not undisputed. In South Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732, a case which arose under the LHWCA, the Supreme Court said: "Petitioners urge that the question whether the decedent was a member of a 'crew' was a question of law. * * * We are unable so to conclude." (at 258, 60 S.Ct. at 548). See also O'Leary v. Brown-Pacific-Maxon, 1951, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483, in which the Court left to the Deputy Commissioner determination of the meaning of the phrase "in the course of employment," as it is used in the LHWCA.

On the other hand, in Norton v. Warner Co., 1944, 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931, decided subsequently to the *Bassett* case, the Court, reminded of the clear Congressional purpose in excluding crew members from LHWCA coverage, took a much narrower view of administrative power:

"The maritime unions appearing in the present case maintain that those remedies [of admiralty] are indeed superior to the relief afforded by the Longshoremen's and Harbor Workers' Act. Whether they are more desirable than a system of compensation is not for us to determine. But where Congress has provided that those basic rights shall not be withheld from a class or classes of maritime employees it is our duty on judicial review to respect the command and not permit the exemption to be narrowed whether by administrative construction or otherwise." 321 U.S. 571, 64 S.Ct. 750–751.

This view seems to the court to be the better, and the prevailing, approach. After all, the determination of Melanson's status does not depend upon the resolution of disputes as to the existence or non-existence of facts, nor upon a judgment as to the weight to be accorded certain testimony, but rather upon the legal significance to be accorded to undisputed testimony, and the construction to be put

upon a statutory term. This is not to say that the Deputy Commissioner is always precluded from making a binding determination of "law", although where he does so it is likely to be insistently referred to as a resolution of "fact" or a "mixed question of law and fact." See South Chicago Coal & Dock Co. v. Bassett, supra; O'Leary v. Brown-Pacific-Maxon, supra. However, where the Congressional intent is perfectly clear, as it is in respect to the exclusion of "crew members" from LHWCA coverage,[3] the administrator has a far narrower ambit of discretion. See Jaffe, Judicial Control of Administrative Action, Ch. 14, esp. 572–74 (1965). Therefore, this court rules that it has the power, and the responsibility, to independently determine Melanson's occupational status, on the basis of the undisputed testimony that was given at the compensation hearing. However, the court can find no case in support of Travelers's position. The weight of authority is clearly to the contrary.

In determining the status of an employee for purposes of the LHWCA, the courts seem to have employed two interrelated tests. In Norton v. Warner Co., supra, at 573, 64 S.Ct. [747,] at 751, the Supreme Court emphasized "that permanent attachment to the vessel which commonly characterizes a crew." Accord: Carumbo v. Cape Cod S.S. Co., 1 Cir., 1947, 123 F.2d 991, where the court stressed the importance of "a more or less permanent connection between the ship * * *" In the latter case, the court, 123 F.2d 995, n. 2, cites with approval Maryland Casualty Co. v. Lawson, 5 Cir., 1938, 94 F.2d 190, 192, where the term "crew member" was held to imply "a definite and permanent connection with the vessel, an obligation to forward her enterprise and to protect her in emergency, and a right to look to her and her earnings for wages."

But Travelers cites Mach v. Pennsylvania R. R. Co., 3 Cir., 1963, 317 F.2d 761, for the proposition that even though an employee does not have a "permanent attachment" to a particular vessel, the nature of his work can nonetheless give him the status of a crew member under the LHWCA. As a general proposition, this is unexceptional. But the opinion in *Mach* discloses that the employee involved, although not assigned to a single ship, devoted a regular and substantial amount of his working day to the navigation of barges between an offshore mooring area and his employer's dock. Navigation was one of his principal duties. This points up the usefulness of a second test, complementary to that of the *Norton* and *Carumbo* cases, which rests on the distinction between "primary" and "incidental" duties. Thus, where an employee's duties, like Melanson's are incidental or minimal in relation to his principal duties, he is held not to be a crew member. E. g., South Chicago Coal and Dock Co. v. Bassett, supra; Merritt, Chapman & Scott v. Willard, 2 Cir., 1951, 189 F.2d 791. Although the cases employing this test typically have involved a worker who is employed full time on a vessel, but occasionally performs tasks in aid of navigation, there seems to be no reason not to apply it to someone like Melanson, whose duties are divided between land and water. Taking this view, the difference between the activities of Melanson and the employee in *Mach* are clear, for the former's use of the "Louise" was clearly incidental to his principal duties of carpentry and diving. Indeed, the Deputy Commissioner expressly found as a fact that Melanson's primary duties were as a carpenter-foreman and Farrell, President of McKie, testified that Melanson had been hired as such, and that the "Louise" was merely used like

**3.** See the statement from *Norton* quoted above. See also Nogueira v. New York, N. H. & H. R.R. Co., 1930, 281 U.S. 128, 136, 50 S.Ct. 303, 74 L.Ed. 602; Warner v. Goltra, 1934, 293 U.S. 155, 159–160, 55 S.Ct. 46, 79 L.Ed. 254; Gilmore & Black, The Law of Admiralty, 338 and n. 273 (1957).

"our pickup truck," to run occasional errands.[4]

A helpful case in this area is Woodfield Fish & Oyster Co. v. Wilde, D.C. Md., 1954, 124 F.Supp. 331, the facts of which bear a number of similarities to those of the case at bar. The court described the employee's status as follows:

> "For some years prior to the accidental injury Carl Wilde, the employee, was employed by Woodfield principally as a supervisor of its plant and operations. During much the larger portion of his time he was occupied in his duties on shore; but for a short period of time during the year his duties consisted at times of being in charge of a small boat belonging to the employer for use in dredging or harvesting oysters on leased oyster beds. At times he would have two other employees with him when using the boat but on the day of the accident he was operating the boat alone." 124 F.Supp. 332.

On these facts the court, merging the "permanent attachment" and "incidental duties" tests, concluded that the employee, Wilde, was not a "master or member of a crew" under the LHWCA.

Considering these authorities, the court rejects Travelers's contention that Melanson was, as a matter of law, "a master or member of a crew." Quite the contrary, it would have been reversible error for the Deputy Commissioner to have found that Melanson was in the excluded class of maritime workers.

*Adequacy of Findings*

Proceedings under the LHWCA are subject to Section 8(b) of the Administrative Procedure Act, 5 U.S.C. § 1007 (b), which requires administrative decisions to include "a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all material issues of fact, law, or discretion presented on the record * * *." Simmons v. Andruzzi, E.D.Pa., 1964, 237 F. Supp. 566.

Travelers maintains that the Deputy Commissioner in this case failed to make the requisite "finding" as to Melanson's being a member of the crew of the vessel "Louise," and that this requires that the case be remanded to correct the deficiency. However, under the heading "Findings of Fact" the Deputy Commissioner made the following statement:

> 4. That upon completion of his *primary duties as carpenter-foreman* on said date, the employee was requested to pilot the employer's workboat LOUISE from Spectacle Island in Boston Harbor back to the employer's dock at the Northern Avenue Bridge, Boston, Massachusetts; that the workboat was upon the *navigable waters* of the United States. [Emphasis added.]

If Travelers means to claim that this is not a sufficient finding of fact upon which to posit the conclusion of law that Melanson was not a "crew member," the contention must be rejected. It seems to this court to be precisely the kind of finding required of the Deputy Commissioner. It is something more than a mere restatement of the evidence as to Melanson's employment; it sums up and explains what his "primary" duties were. Yet it is not merely conclusional as would be the bare assertion that Melanson was not "a member of a crew."

It may be, however, that Travelers objects not to an inadequate finding of fact, but to a failure by the Deputy Commissioner to state expressly his conclusion of law, namely, that Melanson was not a crew member. It is true that no such explicit determination is set forth in the compensation order. However, the Deputy Commissioner clearly attempted to state such a conclusion, for his finding as to "primary duties" is contained in the same paragraph as

---

4. It should perhaps be noted in this connection that "The character of the work being done at the time of the accident is not determinative." Carumbo v. Cape Cod S.S. Co., supra, at 995.

another vital quasi-jurisdictional conclusion, to wit, that at the time of the accident the "Louise" was "upon the navigable waters of the United States." See 33 U.S.C. § 903(a). Moreover, in view of the use by many courts of the test of "primary duties," see cases cited supra, and the fact that counsel for Melanson urged this test upon the Deputy Commissioner, the latter's phrasing his finding of fact in precisely these terms may allow it to serve as a conclusion of law as well.

 All this is somewhat beside the point, however. For if Travelers is merely objecting to the failure to state clearly a conclusion of law, it has not stated a cause for reversal anyhow because Melanson was, as a matter of law, not a master or crew member. This being so, a remand to the Deputy Commissioner in order to obtain his formal statement of this conclusion would be a waste of effort. Such a ritual is not required. As then District Judge Aldrich said in Texas Co. v. R. O'Brien & Co., 1 Cir., 1957, 242 F.2d 526:

> "[I]f all subsidiary facts have been already found, or stand admitted, there can be no need of sending the case back. Our acceptance of the * * * findings here gives us a record free of dispute except as to the ultimate factual inference to be drawn, and hence leaves us as fully able to draw it as would the trial court. The test for reversibility does not require us to return the case for a new finding." 242 F.2d 529.

See Dixie Sand & Gravel Corp. v. Holland, 5 Cir., 1958, 255 F.2d 304, 311 (dissent), and cases there cited.[5]

Plaintiff Travelers's complaint for an injunction setting aside the defendant Deputy Commissioner's compensation order in favor of intervener Melanson is dismissed. Travelers's counterclaim against Melanson is likewise dismissed. It is so ordered.

---

5. Admittedly these cases deal with review of trial court findings pursuant to Fed. R.Civ.P. 52, rather than of administrative findings pursuant to the Administrative Procedure Act, § 8(b). However, where, as here, there is no question of the expertise or discretion of the administrative agency, this distinction does not bear on the issue. It is also true that these cases deal with erroneous conclusions rather than the absence of a conclusion, but this fact has no operative relevance here either.