George E. CHEUVRONT, an
Individual, Plaintiff,

v.

PITTSBURGH & LAKE ERIE
RAILROAD COMPANY, a
corporation, Defendant.

Civ. A. No. 78–1268.

United States District Court,
W. D. Pennsylvania.

Oct. 4, 1979.

Paul L. Hammer, Pittsburgh, Pa., for plaintiff.

G. Edward Yurcon, Pittsburgh, Pa., for defendant.

## OPINION

COHILL, District Judge.

This is an action under the Jones Act, 46 U.S.C. § 688, as amended, and the general maritime law, based on negligence and unseaworthiness of a vessel. The case has been tried to the Court nonjury by stipulation of counsel. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the following findings of fact and conclusions of law are entered.

### Findings of Fact

Plaintiff, George Cheuvront, was born October 15, 1944. He holds a bachelor's degree from Geneva College; he also has a temporary teaching certificate. He has worked irregularly as a substitute teacher over the past several years. However, his primary employment has been for the defendant, The Pittsburgh and Lake Erie Railroad Company, with whom he has been continuously employed since March 23, 1967, at its Colona River Rail Transfer Facility. This facility is located on the Ohio River, a navigable waterway of the United States.

Defendant's operation at its Colona River Rail Transfer Facility involves the unloading of coal from barges and transferring it to railroad hopper cars for rail movement. Barges are delivered to Colona by river tow boats on the Ohio. Before unloading the barges, defendant moves them from the location where they are delivered to a point under a crane by which the coal is unloaded. Movement of the barges is performed by the use of a winch-operated barge shifter cable or by "rounding," a process which allows the river current to pivot a barge about as it is tied to another barge. Empty barges are removed from the unloaded barge fleet by river tow boats. Although the crane is stationery, all of the maneuvering of the barges at defendant's Colona facility is done on the Ohio River, and the barges are vessels in navigation.

Defendant's employees move the barges, make up lines for them, pump them, and otherwise control them from the time of their delivery to the loaded fleet to the time of their removal from the empty or unloaded fleet. These employees wear life jackets and use other seamen's gear. One of the specific jobs in this operation is that of "boat spotter" or "barge spotter." A boat spotter handles the various lines and cables involved in moving the barges. Although a boat spotter performs duties both on shore and on the barges, as much as 90% of his time is spent on the barges—i. e. on the river.

The plaintiff was working as a boat spotter at the time of the incident that gave rise to this suit. Witnesses testified that at about 11:00 A.M. on September 4, 1977, plaintiff had removed the eye of the barge shifter cable from the upriver timberhead of an empty barge and had thrown it aside, and was walking along the barge gunwale toward the downriver end of the barge when he was caught under the arm by a

"monkey line," another type of cable used in defendant's operation. The monkey line caught the plaintiff under the arm and lifted him into the air suddenly and without warning, and he then fell into the hold of the empty barge, a distance of about ten feet. The plaintiff sustained abrasions and contusions to the left side of his chest, ribs and elbow, and an injury to the mid-low back. He was examined and x-rayed at the emergency room of Rochester Hospital; the x-rays were negative.

On September 6, 1977, plaintiff saw his family physician, Wayne Helmick, M.D. The treatment prescribed by Dr. Helmick was heat by hot water pad, bottle or shower. On September 10, 1977, plaintiff complained of pain in the lumbar area, which was diagnosed by Dr. Helmick as lumbar myositis. He was given a muscle relaxant and placed on a therapy program consisting of 32 treatments between September 12, 1977 and November 18, 1977.

On November 16, 1977, the plaintiff was examined by John K. Radler, M.D., an orthopedic surgeon on the referral of Dr. Helmick. Dr. Radler advised plaintiff to return to full time work as of November 21, 1977, without restriction, and gave him a slip to return to work.

On November 30, 1977, plaintiff, complaining of pain in his back and limitation of motion, again saw Dr. Helmick. Dr. Helmick testified that the patient could control the motions of his back in flexion and extension. He accepted plaintiff's word concerning complaints of back pain although he did not make any objective findings. At that time, Dr. Helmick did not prescribe any treatment, and plaintiff thereafter did not receive any further treatment until after he returned to work on April 11, 1978. Dr. Helmick again saw plaintiff on April 7, 1978; at that time Dr. Helmick advised him to return to work. The parties have disputed whether plaintiff should have returned to work on November 21, 1978. This Court finds as a matter of fact that the plaintiff reasonably relied on the advice of his family doctor and was justified in not returning to work until April 11, 1978. *See* Restatement of Torts 2d 457.

Following his injury, plaintiff did not work from Sept. 4, 1977 to April 11, 1978, a period of 218 calendar days. The parties have stipulated that plaintiff was disabled from September 4 through November 20, 1977, and that, even had plaintiff returned to work, he would have been laid off from December 9 to December 26, 1977, and from January 17, 1978 to April 4, 1978, a total period of 95 days, due to a strike by another union.

The period from November 20, 1977 to April 11, 1978 (except for the strike-related lay-offs) has been disputed by the parties. Because we have found that plaintiff reasonably relied on his personal physician in not returning to work before April 11, 1979, we further find that he justifiably missed work due to injury related to the barge accident from September 4, 1977 to April 11, 1978, and is entitled to be compensated for lost wages for 123 work days (218 days minus 95 lay-off days) if the defendant is liable. We have credited all the calendar days as work days, giving plaintiff the benefit of the doubt of the uncertain scheduling in this industry. Evidence indicates that plaintiff worked more than a five-day week before the accident.

From the evidence submitted on plaintiff's substitute teaching, and the fact that such employment was erratic and unreliable, we can make no finding of fact on lost wages attributable to lost teaching opportunities.

Although the plaintiff suffered a serious and painful accident, it is impossible to assess accurately what long term effects, if any, he may endure. As is typical with a case involving a back injury, the experts have differed as to the seriousness of the harm. Likewise, the parties differ dramatically in projections of his future capacity. We find that the plaintiff has sustained pain, suffering, and inconvenience, particularly during the first few weeks following the accident, and that he may suffer recurring pain in the future. The extent of such pain, if any, cannot be objectively predicted

on the evidence before us, nor can we easily predict any future loss of earning capacity where plaintiff has worked fairly regularly since April 11, 1978. We cannot find, as a matter of fact, that his earning capacity will be reduced over the balance of his remaining work life, nor can we say that there is any relationship between the injury and his ability to teach sufficient to enable him to establish future earning loss in that area.

On the other hand, medical testimony, although not establishing future employment impairment, did establish the probability of recurring pain and discomfort.

In addition to the doctor's visits previously discussed, plaintiff received physical therapy on various occasions during late 1977 and again in May, 1978, at the Rochester Unit. He was also examined by Dr. John Sherman, an employee of defendant, and Dr. Samuel Sherman (no relation), another physician.

He sustained the following bills as a result of the accident of September 4, 1977:

| | |
|---|---|
| Rochester Unit | $136.00 |
| Dr. Wayne H. Helmick | 198.00 |
| Dr. Samuel Sherman | 60.00 |
| Dr. John Radler | 50.00 |

(Dr. Radler's bill was paid by the defendant.) We find all of these bills to be reasonable.

The plaintiff's earnings for the first eight months of 1977 were $12,652.56. His rate of pay on September 4, 1977 was $6.743 per hour or $53.95 daily. For the 123 actual work days lost, plaintiff would have received $6,635.85 in earnings.

The parties have stipulated that during this period, plaintiff was paid $5,573.80 in compensation under the Longshoremen and Harbor Workers' Compensation Act.

### Conclusions of Law

Plaintiff was an employee of the defendant, The Pittsburgh and Lake Erie Railroad Company, on September 4, 1977. At the same time, by virtue of its ability and responsibility to control the barges it was unloading, the Pittsburgh and Lake Erie Railroad was the owner *pro hac vice* of the barge upon which the plaintiff was injured. The defendant's negligence caused the plaintiff's injuries; the plaintiff was not contributorily negligent in any respect. Moreover, assumption of the risk is not an available defense. *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939).

The plaintiff was a seaman within the scope of the Jones Act, 46 U.S.C. § 688, because he was aboard the subject barge for the purpose of moving it on the Ohio River, a navigable water. Legally, the barge was a vessel in navigation. His position on September 4, 1977 as a boat spotter required him to ride barges, to secure and payout cables, to make up lines, to light the vessels, pump them, and do all the handling of the barges during the time they were in defendant's possession and control. *See Mach v. Pennsylvania R. R. Co.*, 317 F.2d 761 (3d Cir. 1963); *Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31 (3d Cir. 1975), *cert. denied* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *Simko v. C&C Marine Maintenance Co.*, 594 F.2d 960 (3d Cir. 1979). The defendant is therefore liable to the plaintiff under the Jones Act. *Mach, supra.*

As a Jones Act seaman injured in the course of his employment, Mr. Cheuvront is entitled to maintenance and cure for the time not worked while undergoing curative treatment. Ambiguities or doubts in the awarding of maintenance and cure are to be resolved in favor of the seaman. *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). "Maintenance" is the equivalent of food and lodging to which a seaman is entitled while at sea, if ill or injured, and "cure" is the equivalent of medical care to which an ill or injured seaman is entitled while at sea. *Cox v. Dravo Corporation*, 517 F.2d 620 (3d Cir. 1975). In *Cox*, the Third Circuit held that maintenance and cure are independent of compensatory damages. 517 F.2d at 623.

The parties have agreed that the maintenance and cure award, if proper, is to be in

the amount of $8.00 per day during the period of curative treatment. The plaintiff here is entitled to $8.00 per day for the 218 days from September 4, 1977 to April 11, 1978, or a total of $1,744.00. Because maintenance and cure is intended as a daily sum during a period of recuperation, *Cox, supra,* at 623–25, it is awarded for each calendar day from September 4, 1977 to April 11, 1978 rather than for each actual work day.

■ Although we have not found that the plaintiff's future earning capacity will be impaired and will not award a lump sum for future tangible losses, we believe the plaintiff is entitled to an additional amount for past pain and suffering which has been established, and for future pain and suffering which is intangible but predictable. From the eyewitnesses' testimony, plaintiff experienced a traumatic and probably quite frightening accident. None of the experts disputed the fact that plaintiff experienced immediate pain and lingering effects for at least three months. There was also testimony to the effect that there is often recurring pain and discomfort following back injuries.

Plaintiff is entitled to recover

| | |
|---|---|
| Lost wages (123 days at $53.95 per day) | $ 6,635.85 |
| Maintenance & cure (218 days at $8.00 per day) | 1,744.00 |
| Reasonable medical bills | 394.00 |
| Pain and suffering | 3,500.00 |
| Total | $12,273.85 |

■ Because we find the defendant liable under the Jones Act for the plaintiff's injuries, we need not consider his claim under maritime law of the unseaworthiness of the vessel. *See Cox, supra,* at 622. Any damages awarded under that claim would be cumulative. However, the entitlement we have outlined must be reduced by the amount of benefits paid to the plaintiff by the defendant under the Longshoremen and Harbor Workers' Compensation Act. One case cited by the plaintiff to the contrary involved payments of compensation by an employer and later damage awards against third persons, *Pope & Talbot v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953);

another involved an employer's attempt to set off a third party's expenditures against the plaintiff's recovery, *Isbrandtsen Co. v. Johnson,* 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952); the third involved a set-off of an out-of-court settlement rather than statutory compensation, *Dobbins v. Crain Brothers, Inc.,* 567 F.2d 559 (3d Cir. 1977). More on point is the case of *Massey v. Williams-McWilliams,* 414 F.2d 675 (5th Cir. 1969), where another seaman who had collected compensation under the Longshoremen's Act sued under the Jones Act. The Fifth Circuit held:

Because the payments were made by the employer and not a third party, we are not faced with the usual problems of the collateral source doctrine. And, since the payments were made directly on behalf of the employer pursuant to a statutory scheme whose purpose it is to compensate at least to a degree the pecuniary loss as sustained by an employee from an injury received in the course of his work, we think it fair in the confusion of these ambiguous-amphibious controversies to require, not a repayment as such, but rather a credit against those items of damages ultimately allowed that bear a reasonable relation to the items of loss compensated by workmen's compensation benefits.

414 F.2d at 679–80 (citation omitted). *See also Freeman v. Norfolk and Western Ry. Co.,* 596 F.2d 1205, 1208 (such a set-off avoids unjust enrichment). Therefore, the amount of $5,573.80 in compensation will be deducted from the total entitlement of $12,273.85.