**Michael Gene KIRK, Plaintiff,**

v.

**ALLEGHENY TOWING INCORPORATED and Allegheny Marine Salvage Incorporated, Defendants.**

**Civ. A. No. 83–1908.**

United States District Court,
W.D. Pennsylvania.

Oct. 21, 1985.

Gary Robert Fine, Greensburg, Pa., Robert A. Chaffin, Friedman and Chaffin, Houston, Tex., for plaintiff.

Gerald C. Paris, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

## OPINION

COHILL, Chief Judge.

Presently before us is Plaintiff's Motion to Dismiss Defendants' counterclaim brought in Admiralty for the return of maintenance and cure paid by Defendants under a mistaken belief that the Plaintiff was entitled to it. This action arises from an accident which occurred on November 4, 1981. Plaintiff, while moving railroad cars loaded with coal and dumping that coal from the cars into bins to be placed onto river barges owned by the Defendants, received a serious and disabling leg injury. As a result of that accident, Defendants paid Plaintiff maintenance and cure at the rate of $180 per week from November 18, 1981 through November 15, 1982. These payments totalled $9,360. From November 4, 1981 through March 31, 1983, Plaintiff also received Workmen's Compensation benefits from Defendants' insurance carrier at the rate of $131 per week. Those benefits totalled $9,619.13.

After Defendants terminated Plaintiff's maintenance and cure, Plaintiff filed a complaint in this court alleging that Defendants had failed to fulfill their obligation to make maintenance and cure payments in accordance with general maritime law. In addition, Plaintiff alleged that Defendants had been negligent in inspecting and main-

taining the equipment on which he was injured, in violation of the Jones Act, 46 U.S.C. § 688. Defendants denied liability on the grounds that Plaintiff was not a seaman and filed a counterclaim to recover the maintenance and cure already paid.

In an order dated November 19, 1984, we granted Defendants Motion for Summary Judgment, finding that, as a matter of law, Plaintiff was not a seaman, and was therefore not entitled to either maintenance and cure or damages under the Jones Act. After we granted summary judgment on the complaint, Defendants filed a request for entry of default based on Plaintiff's failure to plead or otherwise respond to the Defendants' counterclaim. Plaintiff immediately responded with a motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted. Having denied Defendants' request for entry of default, we now address Plaintiff's motion to dismiss.

The Defendants' counterclaim is based on the theory that the Plaintiff, if he is allowed to keep the money paid, will be unjustly enriched because he was not entitled to the payments in the first place. In the alternative, Defendants maintain that the money paid under maintenance and cure constitutes a double recovery, since Plaintiff also received Workmen's Compensation. Both arguments rely on a theory of unjust enrichment and appeal to the court's equitable powers for relief in the form of restitution.

Plaintiff argues that Defendants paid Plaintiff maintenance and cure under a mistake of law and not of fact, thus no restitution is required. Plaintiff points out that the Defendants knew that the Plaintiff's employment did not involve a permanent connection with this particular vessel and did not require Plaintiff to be aboard the vessel for navigational purposes. Plaintiff also argues that repayment of the maintenance and cure would be contrary to public policy and the purpose behind imposing the duty on shipowners to make those payments. Finally, Plaintiff denies having recovered twice for the same injury in that maintenance and cure and Workmen's Compensation are distinct remedies serving different beneficial functions.

In evaluating a motion to dismiss a counterclaim, the allegations of the counterclaim and all reasonable inferences drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Kugler v. Helfant*, 421 U.S. 117, 125 n. 5, 95 S.Ct. 1524, 1531 n. 5, 44 L.Ed.2d 15 (1975); *Empire Abrasive Equipment Corp. v. HH Watson Inc.*, 567 F.2d 554, 557 (3d Cir.1977); *Amanto v. Withlin*, 544 F.Supp. 140, 141 (E.D. Pa.1982). A counterclaim should not be dismissed unless it appears that the nonmoving party could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

As far as we can tell, this case is one of first impression with regard to the return of maintenance and cure paid under a mistaken belief that Plaintiff was a seaman. Although no statutory authority governs this situation, Defendants argue that general principles of restitution and unjust enrichment should be applied to resolve the counterclaim in their favor.

■ Generally, a person who has been unjustly enriched at the expense of another is required to make restitution to the other. *Shipping Co. of India v. Sun Oil*, 569 F.Supp. 1248 (E.D.Pa.1983). Courts have carved out certain specific exceptions to this rule. For instance, it has long been held that money voluntarily paid on a mistake of law cannot be recovered on the ground that the party supposed he was bound in law to pay it when in truth he was not. *Gulf Refining Co. v. City of Philadelphia*, 31 F.Supp. 587, *aff'd*, 110 F.2d 661 (3d Cir.1940); *PLM, Inc. v. Consolidated Rail Corp.*, 490 F.Supp. 194, 196 (E.D.Pa. 1980); *AAA Trucking Corp. v. Teamsters Pension Trust Fund*, 480 F.Supp. 579, 580–81 (E.D.Pa.1979) *vacated*, 633 F.2d 209 (3d Cir.1980). A mistake of law is a mistake "as to the legal consequences of an

assumed state of facts." *Acme Markets v. Valley View Shopping Center,* 342 Pa.Super. 567, 493 A.2d 736, 737 (1985) (citing *Betta v. Smith,* 368 Pa. 33, 36, 81 A.2d 538, 539 (1951). Where, under a mistake of law, one voluntarily and without duress or fraud pays money to another with full knowledge of the facts, the money paid cannot be recovered. *Acme* 493 A.2d at 737 (citing *Ochiuto v. Prudential Ins. Co. of America,* 356 Pa. 382, 384, 52 A.2d 228, 230 (1947)).

■ Defendants argue that *Vella v. Ford Motor Company,* 421 U.S. 1, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975) leaves open the possibility of restitution of mistakenly paid maintenance and cure. In *Vella,* a seaman received a permanent injury which was not diagnosed as permanent until sometime later. Maintenance and cure is not to be paid once an injury is declared permanent. *Farrell v. United States,* 336 U.S. 511, 517, 69 S.Ct. 707, 710, 93 L.Ed.2d 850 (1949). The question at issue in *Vella* was whether payment of maintenance and cure should end when the injury became permanent, or when it was diagnosed as permanent. The Court reasoned that denial of maintenance and cure when the seaman's injury, though in fact permanent immediately after the accident, is not medically diagnosed as permanent until long after its occurrence, would frustrate the purpose of imposing the duty as well as the ease of administering it. 421 U.S. at 4, 95 S.Ct. at 1383. Employers would be encouraged to withhold payments until the illness or injury had been thoroughly examined. Also, if forced to reimburse amounts improperly paid, seamen would be discouraged from accepting any payments until certain that the injury was not permanent. Either way, the Court concluded that the object of the payments, protection of the seamen's interests, would be impaired. *Id.*

Defendants' arguments are both factually and philosophically inconsistent with the situation occurring in *Vella.* Here, Defendants knew what the Plaintiff's job entailed and made an erroneous conclusion as to whether those job requirements made him a seaman entitled to maintenance and cure, or a longshoreman whose sole remedy lay in the Longshore and Harbor Workers Compensation Act ("LHWCA"). 33 U.S.C. §§ 901–950 (Supp. II 1972). Unlike the medical information required to determine the permanence of an injury, the Defendants here were not required to consider factors unknown to them at the time of initial payment.

In its analysis, the Court in *Vella* repeatedly asserts that the purpose of maintenance and cure is to protect the seaman who is a ward of the Admiralty. Even under the facts of *Vella,* which we believe are more sympathetic toward the plight of the employer than are the facts of the present case, we believe that the Court indicates an unwillingness to impose the burden of restitution upon the employee. Instead, *Vella* seems to favor burdening the shipowner with the obligation of determining which of his employees are seamen and the risk of making improper payments of maintenance and cure when he has not done so.

Defendants next contend that Plaintiff has recovered twice for his medical expenses, once through the payment of maintenance and cure, and again through the payment of Workmen's Compensation by the Defendants' insurance company, thus arguing that Plaintiff has received a "double recovery."

■ In order to address this argument, we must examine the origin and purpose of maintenance and cure, a remedy unique to admiralty. The ancient duty of a vessel and her owner to provide maintenance and cure for a seaman who becomes ill or is injured while in the service of the vessel arises from the contract of employment and not from any negligence on the part of the owner. *Calmar S.S. Corp. v. Taylor,* 303 U.S. 525, 527, 58 S.Ct. 651, 652–53, 82 L.Ed. 993, 996 (1938). It is completely separate from any liability which may be imposed under the Jones Act for negligence or under general maritime law for unseaworthiness of the vessel. Likewise, it has no relationship to any duty of indemnifica-

tion which may arise. *Cox v. Dravo Corp.,* 517 F.2d 620, 622–23 (3d Cir.), *cert. denied,* 423 U.S. 1020, 96 S.Ct. 457, 46 L.Ed.2d 392 (1975).

The reasons behind imposing the obligation to provide maintenance and cure on the shipowner, without regard to his culpability, were graphically stated by Justice Story and later summarized by Justice Stone as follows:

> the protection of seamen, who, as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; the maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service.

*Calmar,* 303 U.S. at 528, 58 S.Ct. at 653 (citing *Harden v. Gordon,* 11 F.Cas. 480, 483 (No. 6,047) (C.C.D.Me.1823)).

Essentially, the shipowner's duty stems from an early policy decision to promote the "combined objective of encouraging marine commerce and assuring the well-being of seamen," who are by nature of their employment, dependent upon their ships. *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943). As the *Vella* Court pointed out, maintenance and cure was designed to be a broad and inclusive duty, free of uncertainty, complexity and administrative burdens. 421 U.S. at 4–5, 95 S.Ct. at 1383–1384 (citing *Farrell,* 336 U.S. at 516, 69 S.Ct. at 709).

■ Maintenance and cure benefits are intended to provide a seaman with the food, loding and medical services to which he is entitled normally during his service on board a ship. *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). Maintenance is a substitute for the seamen's free shipboard food and lodging. Cure is the equivalent of the medical attention the seaman would be entitled to receive while at sea. *Calmar,* 303 U.S. at 528, 58 S.Ct. at 653; *Cox,* 517 F.2d at 623. Maintenance and cure is not a substitute

for lost wages. *Shaw v. Ohio River Co.,* 526 F.2d 193, 199 (3d Cir.1975).

Workmen's Compensation, which is paid on behalf of the employer by his insurance carrier, is intended to provide benefits to employees who suffer loss of earnings as a result of work-related injuries. *U.S. Steel Corp. v. Workmen's Compensation Appeal Bd.,* 62 Pa.Cmwlth. 502, 437 A.2d 92 (1981). While Workmen's Compensation can also cover medical expenses incurred due to injury on the job, 77 Pa.Cons.Stat. Ann. § 531 (1952 & Supp.1985), Defendants allege no facts supporting an inference that any medical expenses were paid to Plaintiff. In fact, Defendants provide no evidence that medical expenses were paid to Plaintiff as part of the maintenance and cure either. Plaintiff, however, alleges that he received Workmen's Compensation only for his lost wages and not for any medical expenses. He supplies a breakdown of his salary times the number of work weeks missed, which total equals the amount of compensation he received. Likewise, Plaintiff maintains that he received only maintenance representing a weekly allowance for subsistence and no amount for cure. He provides computations demonstrating that the subsistence rate times the weeks for which Defendants voluntarily paid maintenance under a mistaken belief that Plaintiff was a "seaman" total the sum received as maintenance and cure.

■ Even assuming that Defendants had alleged any facts in support of the argument that Plaintiff received a double recovery, the relief requested is not supported by the weight of case law. Many courts have permitted set off where a seaman received equivalent coverage from another source, but we have discovered no cases where actual restitution of maintenance and cure was required of the seaman. *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458, *reh'g denied,* 448 U.S. 916, 101 S.Ct. 37, 65 L.Ed.2d 1179 (1980) (citing *Calbeck v. Travelers Ins. Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962)) (Concurrent coverage of state compensation statute and LHWCA

does not create danger of double recovery since an award under one would be setoff against any recovery under the other); *Shaw,* 526 F.2d at 200–01 (Blue Cross Blue Shield payments under policy paid for by employer setoff from recovery for maintenance and cure); *Haughton v. Blackships, Inc.,* 462 F.2d 788, 791 (5th Cir.1972) (Benefits payable to seaman under health insurance policy purchased by employer set off from maintenance and cure payments); *Cheuvront v. Pennsylvania and Lake Erie R.R. Co.,* 477 F.Supp. 193, 197 (W.D. Pa.1979) (Cohill, J) (Maintenance and cure recovery set off by amount paid under LHWCA). *See also, Boatel, Inc. v. Delamore,* 379 F.2d 850 (5th Cir.1967); *Harney v. William M. Moore Building Corp.,* 359 F.2d 649 (2d Cir.1966); *Sims v. Marine Catering Service, Inc.,* 217 F.Supp. 511 (D.La.1963); *Schellenger v. Zubik,* 170 F.Supp. 92, 93 (W.D.Pa.1959); *Chesser v. General Dredging Co.,* 150 F.Supp. 592, 595–96 (S.D.Fla.1957).

Defendants cite one case, *American Export Isbrandtsen Lines, Inc. v. Valiente,* 1975 AMC 1805 (N.Y.Sup.1943), in support of their argument for restitution on the grounds of double recovery. That case, however, is readily distinguishable factually from the present case and does not permit restitution to be had from the seaman of money already received by him. In *American Export,* a third party tortfeasor was held liable to the seaman for a personal injury. The damage award included a sum for medical and related expenses which had already been paid for by the innocent employer through maintenance and cure. Consequently, the court held that equity required the tortfeasor to pay a portion of the judgment to the employer as reimbursement for the maintenance and cure payments previously made. *American Export,* 1975 AMC at 1805–06.

Requiring reimbursement of the maintenance and cure by third party tortfeasor is quite different from requiring the seaman personally to repay money received as maintenance and cure. Reimbursement by a third party causes no hardship to the seaman who has probably already spent the money dispensed by his employer to pay off medical bills. In essence, the relief from double recovery which *American Export* and other similar cases provide is more in the form of indemnification than restitution. *See Wisconsin Barge Line, Inc. v. The Barge Chem 301,* 390 F.Supp. 1388, 1393–94 (M.D.La.1975); *Richardson v. St. Charles—St. John the Baptist Bridge & Ferry Authority,* 284 F.Supp. 709, 716 (E.D.La.1968) (citing *Jones v. Waterman S.S. Corp.,* 155 F.2d 992, 999 (3d Cir.1946)). These cases grant the employer, shipowner, who pays maintenance and cure to an injured employee, seaman, a right over against the third party wrongdoer whose negligence caused the seaman's injury.

In conclusion, we do not believe that Defendants have stated a cause of action for restitution of maintenance and cure payments voluntarily made under a mistake of law. Nor do we find grounds to impose restitution under a theory of double recovery. Consequently, we will grant the Plaintiff's Motion to Dismiss the Counterclaim.