HALL, Judge.
Plaintiff, Lucille Webert, sued defendant, Associated Indemnity Corporation, (it was stipulated at trial that the proper defendant is American Automobile Insurance Company) to recover workmen’s compensation benefits for total and permanent disability allegedly arising out of two accidents which occurred during the course and scope of her employment by American Linen Service, Inc. For oral reasons, not reflected by the record, the trial court rejected plaintiff’s demands. We affirm the judgment of the district court.
The factual issue presented by this appeal is whether plaintiff proved the alleged on-the-job accidents and a resulting work-related injury.
Plaintiff worked for American Linen Service, Inc. for approximately nine months. Her work at the time of the alleged accidents was “pitching sheets”, picking up sheets and handing them to coworkers who ran them through ironing machines. In doing this work, plaintiff stood behind and in close proximity to the co-workers, Ida Harris and Mattie Murray. E. P. (Rickie) Brocato, superintendent of the plant and plaintiff’s immediate supervisor, also worked in close proximity.
Plaintiff testified that on Wednesday, May 14, 1975, she was hit in the back by a cart full of wet sheets pushed by Brocato. She screamed and cursed, but got no apology from Brocato. She testified she talked to Miss Harris about Brocato’s failure to apologize or otherwise acknowledge the incident. She testified her back hurt her rather severely for a half hour or longer, but that the severe pain gradually became dull and she managed to continue working with the help of a rest during lunch, reclining on the seat of her car. She further stated she completed the working week, but felt it necessary to stay home and remain quiet throughout the weekend in order to rest.
Plaintiff testified that on Monday, March 19, 1975, about 11:30 in the morning she slipped in a puddle of water at her work station and almost fell, grabbing onto a storage cart for support. At this time she felt something tearing in her back and a sharp pain. She testified Ida Harris was looking right at her and said something to the effect of “be careful and don’t fall.” Plaintiff said that after about 30 minutes she went to Brocato to report her pain and ask permission to see a doctor but he would not listen, brushing her off and saying only that he could not afford any absentees that day. Plaintiff then went into American’s office and reported the accident to Gene Thoma, plant manager. She testified Thoma told her she could leave, but she had to call her brother to take her to the doctor. Thoma was not called to testify by defendants and it is to be presumed he would have verified plaintiff’s testimony about her report to him.
When plaintiff’s brother asked which doctor he should take her to, he was told to take her to Dr. Jason C. Sanders. He took her to Dr. Sanders directly from American’s plant.
Dr. Sanders testified he examined plaintiff on May 19 and each day thereafter until the 23rd, when he had her hospitalized at Doctor’s Hospital. While in the hospital until about June 10, 1975, she was x-rayed, received physiotherapy, and was placed in traction. Dr. Sanders said plaintiff gave a history of being hit by a cart in the lower back and of further hurting her back while picking up sacks of wet linen. He said she did not mention slipping on any water. His diagnosis was a moderately severe lum-bosacral sprain which would cause problems for a month or six weeks. Dr. Sanders, based on the x-rays, also thought it possible *333 she had the beginning of a degenerated disc at the L-5 space. The doctor described plaintiff as a difficult patient with whom he could not establish rapport.
Plaintiff also offered the testimony of her brother and Lee Arthur Mayshack. Her brother testified she seemed to be in pain on May 19 when he took her to the doctor. Mayshack testified he saw her in the lunchroom for a few minutes on May 19, that she told him at that time she had slipped and hurt her back, and that she was crying when he spoke with her. Plaintiff complains of the trial court’s refusal to allow her to call Mayshack under cross-examination as an employee of the defendant’s insured. Plaintiff proceeded to examine Mayshack on direct examination and his knowledge of the situation was fully developed. Whether he was on direct or cross-examination is of no consequence.
Dr. V. Ward Barr, a neurosurgeon, examined plaintiff on June 26 and August 5, 1975. On the first examination, Dr. Barr’s impression was that she had nerve root irritation at the L-5, S-l level. Her history was compatible with a ruptured disc and he recommended hospitalization for a myelogram. After the second examination, the doctor was not convinced plaintiff’s apparent discomfort was anatomical and felt it might be on a functional basis. He still believed a myelogram would be helpful in making a diagnosis. The doctor thought she might be exaggerating, he thought she could do some of the tests 'but would not, and he had questions as to her credibility.
Plaintiff did not have the myelogram, testifying she could not afford further treatment in the absence of recovery in this suit.
Two other specialists saw plaintiff while she was in the hospital but neither was called to testify at the trial.
Defendant introduced the testimony of Brocato, Mattie Murray and Ida Harris. Brocato testified that on May 14 he did bump plaintiff with a barely moving cart, but he said the impact was slight and to her hip rather than her back. He stated plaintiff made no remarks at the time of this incident. He testified further that he could not recall whether there was water in the aisle where plaintiff said she slipped on the day of the alleged slip and fall, and that he did not witness any accident on that day. He did say that plaintiff reported to him that she had a catch in her side and he told her to go see a doctor. He made a report of this which was filed May 20 and made no mention of water on the floor.
Mattie Murray and Ida Harris both testified that they worked within a few steps of plaintiff. Both women testified there was no water on the floor on the 19th of May. Neither remembered plaintiff having any accident or complaining about any pain. Miss Harris testified that she did not hear plaintiff scream out on the 14th, nor did she see the cart incident of that day. She denied plaintiff made any remarks to her about the incident. Miss Harris categorically denied seeing or knowing anything about the accident of the 19th, as testified to by plaintiff. Miss Murray testified plaintiff told her on the 19th she had been sick over the weekend and told her she was sick and going home when she left on the 19th.
In a workmen’s compensation case, the burden is on the plaintiff to prove by a preponderance of the evidence the occurrence of an accident in the course and scope of employment and a resulting injury or disability. Dawson v. Western Electric Company, Inc., 273 So.2d 873' (La.App.2d Cir. 1973) writs refused, La., 275 So.2d 791. The testimony of the plaintiff as to the occurrence of an accident may be sufficient, if supported by surrounding and corroborated circumstances and if there is nothing to discredit the employee’s account of the accident. Blair v. Procon, Incorporated, 188 So.2d 676 (La.App.2d Cir. 1966); Campbell v. Travelers Insurance Company, 324 So.2d 26 (La.App.2d Cir. 1975). The trial court’s conclusion of fact is entitled *334 to great weight, particularly where the findings of facts rest primarily on an evaluation of the credibility of the witnesses. Williams v. State Farm Mutual Automobile Insurance Co., 266 So.2d 718 (La.App.3d Cir. 1972); Carter v. Avondale Shipyards, Inc., 308 So.2d 472 (La.App.4th Cir. 1975).
Here, the trial judge rejected plaintiff’s demands. His judgment necessarily implies a conclusion that plaintiff either failed to prove the occurrence of the alleged accidents or failed to prove her injury resulted from the relatively minor incidents. The conclusions of the trial judge necessarily were based on a lack of credibility of plaintiff’s testimony.
There are inconsistencies and contradictions in the testimony of the witnesses tending to discredit plaintiff’s account of the alleged accidents. Although working in close proximity to plaintiff, Miss Murray, Miss Harris and Brocato deny any knowledge of the allegedly more serious accident of May 49. Miss Harris’ testimony that she knew nothing of the incident of the 14th and did not see the incident of the 19th is in direct conflict with the plaintiff’s testimony. The testimony of the coworkers that there was no water on the floor on the 19th is in direct conflict with plaintiff’s testimony. Brocato’s description of the incident of the 14th as being very minor is substantially in conflict with plaintiff’s version of the incident. The coworkers’ denial that plaintiff complained of pain in the days following the incident of the 14th is in direct conflict with plaintiff’s testimony. The testimony of both Dr. Sanders and Dr. Barr also casts doubts on plaintiff’s credibility.
With evidence in the record tending to discredit plaintiff’s testimony about the un-witnessed accidents, we find no manifest error in the judgment of the trial court.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.