365 So.2d 845 (1978)
Victor J. BRADBURY
v.
Washburn PAUL, Jr.
No. 9847.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1978.
*846 Victor Bradbury, in pro per.
Jerald L. Album, Metairie, for defendantappellee.
Before LEMMON, STOULIG and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiff brought this suit for a permanent injunction against his next door neighbor to prevent him from erecting any sort of barrier across an alley which runs behind the properties and from obstructing his use of the alley behind defendant's property. In his petition plaintiff alleged that he is the owner of Lots 12 A and 12 B, each measuring 25 feet front on Hesper Avenue in Jefferson Parish by 150 feet deep, in Square 31 of Bonnabel Place Subdivision, in accordance with a plan made by Bonnabel on October 30, 1924. Attached to the petition is a copy of the sale, but the map of 1924 is not a part of the record. Plaintiff alleged further that Bonnabel had registered in the Conveyance office on June 9, 1916, a dedication of the streets in the Subdivision and filed a map, copy of which is annexed to the petition.
According to this map Square 31, bounded on the north by Socrates Street, south by Hesiod Street, east by Helios Street and west by Hesper Avenue, was divided into thirty lots with six fronting on Socrates and Hesiod Streets and nine each fronting on Helios and Hesper. It further shows running north-south along the rear of the nine lots fronting on Hesper in common with the rear of the nine lots fronting on Helios an alley, the ends of which open into alleys running east-west along the rear of the six lots fronting on Hesiod and the six fronting on Socrates. These two alleys are parallel with Hesiod and Socrates and open on each end into Hesper and Helios Streets. Thus, every lot in the square was accessible to Hesper and Helios Streets from its rear.
In his petition plaintiff further alleged that defendant occupied Lots 13 A and 13 B of the Square and violated plaintiff's rights by erecting fences across the alley thereby preventing him from the use of the alley.[1] Finally, in his petition plaintiff alleges that the alley running along the rear of his and defendant's property constituted a servitude in his favor, of which he has been deprived by defendant.
In answer to this petition, defendant denied all of plaintiff's allegations, and in the alternative alleged that plaintiff's use of this alley was a "discontinuous and apparent servitude" which was extinguished by non usage for ten years under LSA-C.C. Arts. 789 et seq.
At the trial of the case defendant testified that he bought Lots 13 A and 13 B in 1949. His lots were next door to and in the direction of the lake from plaintiff's. Since his acquisition the Interstate Highway was built on the lake side of his property, but he bought 12 feet more of frontage on Hesper from the Highway Department so that his property now consists of 62 feet along Hesper and the lake side is along the Interstate Service Road. With respect to the alley behind his house, he and his neighbor to the rear of his property erected a fence across the alley in 1968 and he gave the following explanation:
". . . the way that alley has been handled, it's never been used, not to my knowledge. So as a consequence, the people on each side of the alley wouldif you wanted to use or take in six feet of it which it's a twelve foot alley, then they got together themselves andfor instance, the man in back of me, heI tried to get him to take six feet and put his back fence in the middle, and I'd have a back fence `cause my fence had fallen down, you see, and I hadn't replaced it. *847 But he didn't want to move his fence. SoSo, hismy neighbor in the back, his mother and his father cleaned that alley quite a few times, and cut the grass, and then finally when my fence fell down, then both of us started cutting it. But it isThere's an agreement between he and I like between the other properties down the block thatboth of us use it jointly."
He went on to testify that he uses the alley as a portion of his lawn.
The other witnesses who testified at the trial were plaintiff, Robert Heintz, the owner of the lot to the rear of defendant's, and Gerald Cassanova, the next door neighbor of plaintiff on the opposite side from defendant's property. All of the testimony centered around the use which was made of the alley between Cassanova's house and the portion of the alley between the property of defendant and Heintz.
The trial court in dismissing plaintiff's suit found that plaintiff's use of the alley behind defendant's property constituted a servitude of passage and from the facts found that this servitude had been lost because of non usage for ten years.
From this judgment plaintiff has appealed and both parties have proceeded to argue on the theory that this is a servitude problem with the issue of prescription for non usage being paramount.
Arts. 647 and 699 seem to contemplate the situation where there are two adjacent estates, with one being subservient, i. e., owing the servitude to the other dominant estate. When no use is made of the servitude for ten years the subservient estate is freed of the servitude so that the owner of the subservient estate is no longer required to make his land available to the neighbor for passage. Art. 789.
In the instant case plaintiff has not alleged that defendant is the owner of the alley behind his property through which plaintiff seeks to exercise a servitude of passage. The sparse documentary evidence indicates that the rear boundary line of defendant's record title abuts the alley.
Defendant's own testimony is to the effect that he did not own the 12-foot alley behind his house but he simply took it over and he did so only after determining his neighbor to the rear was not interested in having any part of the 12 feet. Originally, he had the idea that he would take 6 of the 12 and the neighbor to the rear would take the other 6.
Since there is nothing in the record to suggest that defendant ever acquired the alley behind his lots by title or by acquisitive prescription, the non use by plaintiff of the alley would not operate as a loss of a servitude of passage in defendant's favor. At best, it might release the alley from a servitude in favor of the owner of the alley. Whether the owner be Bonnabel's heirs or assigns or the public is not shown in this record.
The record is incomplete in that the 1924 map of the subdivision referred to in plaintiff's petition is not the map which is annexed to his petition and made part of the record, but from the testimony it appears that the alleys laid out on the 1916 map were the same in dimension and shape as that which the parties testified about at the time of the trial. The jurisprudence indicates that the filing of this map by Bonnabel in 1916 or 1924 and subsequent sales of lots from that map constituted a dedication of the alleys to public use. Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965), Metairie Park, Inc. v. Currie, 168 La. 588, 122 So. 859, McDonogh v. Calloway, 8 Rob. 92 (1844), Collins v. Zander, 61 So.2d 897 (La.App.Orl.1952), Esposito v. Gaudet, 8 So.2d 783 (La.App.Orl.1942).
The instant case is somewhat complicated by the inclusion in the 1916 act of dedication of the subdivision of the following provision:
". . . The said Bonnabel . . . declared that the alleys in the various squares are not dedicated to public use because they are intended solely for the use and convenience of the lot owners abutting on said alleys in each square."
Several points are made with respect to this language; First it was not the 1916 act *848 and map which were referred to in plaintiff's act of purchase, but rather a 1924 map. The record does not show whether the 1924 map was filed pursuant to the same language as was included in the 1916 act or whether it was filed alone raising the possibility that the quoted language from the 1916 act was repudiated. Second, if we assume that the language from the 1916 act survived after the 1924 map was filed the language is ambiguous in that it purports to deprive the general public of the right to use the alley but it confers the right to use the alley on all of the lot owners in the subdivision.
If there was a public dedication of these alleys in the square, including that portion of the alleys behind the properties of the parties, the formal dedication could only be terminated by revocation in accordance with LSA-R.S. 48:711 et seq. or their predecessor statutes, R.S. 48:701, Act 382 of 1938, or Act 151 of 1910.
We have concluded that plaintiff may be entitled to the relief he seeks in these proceedings if he can show that the alley was dedicated to the public and such dedication has not been revoked in accordance with the law, but he has failed heretofore to state a cause of action for that relief.
The failure to disclose a cause of action may be noticed by this court on its own motion, C.C.P. Art. 927. Since it appears that the petition may be amended to state a cause of action, plaintiff should be given this opportunity, Art. 934.
In the event that plaintiff chooses to carry on this litigation there is a question as to the status of the other owners of lots in the square as necessary or even indispensable parties. C.C.P. Arts. 641 and 642. It may be that every owner has a right to use the alley, which right could be affected by a judgment in this case and, additionally, there was testimony that other owners in the square had fenced off parts of the alleys. The interests of these owners may be affected by a judgment herein.
Accordingly, the judgment appealed from is reversed and set aside and an exception of no cause of action is sustained to plaintiff's petition. The petition shall be amended within a delay to be fixed by the trial court, and the parties shall join other parties in these proceedings who may be indispensable and may join those who are necessary. The costs of this appeal are assessed against defendant, and the assessment of all other costs will await the outcome of the case. The case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] The 1916 map shows Lots 12 and 13 but not 12 A, 12 B, 13 A and 13 B. We can only assume that the 1924 map resubdivided the two lots into four, and perhaps resubdivided all thirty lots.