899 So.2d 668 (2005)
John Felder CRAWFORD, II
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION.
No. 2003 CA 2117, 2003 CA 2118.
Court of Appeal of Louisiana, First Circuit.
March 24, 2005.
Rehearing Denied May 11, 2005.
Bennett Boyd Anderson, Jr., Anderson & Broussard, Lafayette, for Plaintiff-Appellant John Felder Crawford, II.
Brent E. Kinchen, Daniel A. Reed, Seale, Smith, Zuber & Barnette, Baton Rouge, for Defendant-Appellee United Services Automobile Association.
Before: PARRO, KUHN, and HUGHES, JJ.
PARRO, J.
The offeree in connection with an offer of judgment appeals a judgment granting the offeror's motion for judgment based on an interpretation of their agreement that allowed for the reduction of the settlement offer by amounts previously received by *669 the offeree. For the following reasons, we reverse and render judgment.

Factual and Procedural Background
John Felder Crawford, II (Crawford) filed separate suits against his insurer, United Services Automobile Association (USAA), in connection with automobile accidents that occurred on June 13, 1994, and November 4, 1995, seeking to recover damages under an insurance policy that provided uninsured/underinsured motorist and medical payment coverage.[1] These suits were subsequently consolidated.
On April 4, 2002, Crawford filed a motion for summary judgment on the issue of liability and insurance coverage, which was opposed by USAA. Following a hearing on this matter, on November 6, 2002, the trial court entered judgment in favor of Crawford, finding he had established liability for the 1994 accident, but had failed to establish liability for the 1995 accident. On the issue of coverage, the trial court held that Crawford had established uninsured/underinsured motorist coverage by USAA in the amount of $1.3 million for each accident, subject to a credit of $55,000 for the 1994 accident and a credit of $105,000 for the 1995 accident.
In order to address the issues presented in a pending motion to compel and a motion to designate an order for trial, the parties filed a joint stipulation into the record on March 7, 2003, which, in pertinent part, provided:
1. Liability is established in favor of. . . Crawford . . . with respect to the accident of November 4, 1995.
2. Both parties would stipulate that the plaintiff would be entitled to a 5 percent penalty and a 20 percent attorney's fee award on any damage awarded (penalties and attorney's fees to be calculated on the final award to plaintiff from each accident after the stipulated past credits are applied).
(A) The penalties and attorney's fee calculations will be limited by the available UM coverage for each accident.
(B) The post-verdict calculations are to be performed in accordance with a January 23, 2003 letter agreement (attached  Exhibit 1).[2] (Footnotes added).
*670 In an effort to settle Crawford's suits, counsel for USAA sent a letter to Crawford's counsel dated April 3, 2003, which read:
This letter shall be considered an offer of judgment for the purpose of settling all claims existing between USAA and John Crawford. This offer is for $250,000.00 and is exclusive of all costs, interest, attorney fees, and any other amount which may be awarded pursuant to statute, rule, or stipulation.
By letter dated April 7, 2003, Crawford's counsel responded as follows:
Thank you for your April 3, 2003, offer of judgment (copy attached). Pursuant to Code of Civil Procedure Article 970, please consider this correspondence as written notice that the offer is accepted.
The following day counsel for both parties corresponded by fax transmission regarding the settlement. The initial letter from USAA's counsel to Crawford's counsel acknowledged receipt of the April 7, 2003 letter of acceptance of USAA's settlement offer for a total sum of $250,000 and indicated that a check in that amount would be forthcoming upon further confirmation by Crawford. That same morning, counsel for Crawford faxed a letter to USAA's counsel which set forth his calculation of Crawford's entitlement under the terms of the offer of judgment, inclusive of penalties, attorney fees, and legal interest through April 15, 2003. The total amount demanded from USAA was $486,702.75, which consisted of the $250,000 settlement offer, $12,500 in penalties, $52,500 in attorney fees, and $171,702.75 in legal interest. USAA's faxed response that afternoon to Crawford's calculations was:
Obviously there is some misinterpretation of our offer of judgment. USAA had $250,000.00 in authority to settle the case and my client intended the offer to be a total sum.
As I see the issue, we need to continue to proceed to trial or see if the case can settle for the limit of my client's authority of $250,000.00.
In light of the disagreement as to the amount owed to Crawford pursuant to the offer of judgment, USAA filed a motion for judgment on April 11, 2003, urging the application of prior stipulations to any judgment rendered. In particular, it urged application of the stipulation concerning the deduction of past credits of $55,000 for the 1994 accident and $105,000 for the 1995 accident, so as to reduce the amount to which Crawford was entitled under the offer of judgment to $90,000,[3] thus obligating USAA to pay Crawford only an additional $113,400,[4] inclusive of penalties and attorney fees. Crawford responded by filing a cross motion for judgment on the offer of judgment, claiming an entitlement to $315,000[5] from USAA, plus legal interest and all court costs.
After a hearing on the cross motions for judgment, the trial court found that the offer of judgment did not preclude USAA from receiving credit for the amounts previously paid, which entitlement to such credit was established in its November 6, 2002 judgment in connection with Crawford's *671 motion for summary judgment. Furthermore, the trial court found that the wording of the joint stipulation concerning the calculation of penalties and attorney fees for bad faith dealings reveals that the parties contemplated a reduction by the credit amounts previously determined by the trial court. Accordingly, Crawford's motion for judgment on the offer of judgment was denied, and USAA's motion was granted. Judgment on the offer of judgment was rendered in favor of Crawford for (1) $250,000 subject to a total credit of $160,000, (2) $4,500 in penalties, and (3) $18,900 in attorney fees. Based on these findings, the trial court entered judgment in favor of Crawford for a total of $113,400, together with legal interest and costs. Crawford appealed, contending the trial court erred in granting USAA's motion for judgment, denying his cross motion for judgment, and failing to award him $315,000, plus legal interest and costs in accordance with the offer of judgment.

Discussion
Concerning an offer of judgment, LSA-C.C.P. art. 970(A) provides:
At any time more than thirty days before the time specified for the trial of the matter, without any admission of liability, any party may serve upon an adverse party an offer of judgment for the purpose of settling all of the claims between them. The offer of judgment shall be in writing and state that it is made under this Article; specify the total amount of money of the settlement offer; and specify whether that amount is inclusive or exclusive of costs, interest, attorney fees, and any other amount which may be awarded pursuant to statute or rule. Unless accepted, an offer of judgment shall remain confidential between the offeror and offeree. If the adverse party, within ten days after service, serves written notice that the offer is accepted, either party may move for judgment on the offer. The court shall grant such judgment on the motion of either party.
The function of Article 970 is to compensate the rejected offeror who was forced to incur greater trial litigation costs than he would have if the offeree had accepted his settlement offer. The article is punitive in nature and therefore must be strictly construed. Landry v. Leonard J. Chabert Medical Center, 02-1559 (La.App. 1st Cir.5/14/03), 858 So.2d 454, 467, writs denied, 03-1748, 03-1752 (La.10/17/03), 855 So.2d 761; see also LSA-C.C.P. art. 970(C).
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. LSA-C.C. art. 3071. To the extent that an offer of judgment is utilized for the purposes set forth in LSA-C.C. art. 3071, an acceptance of such an offer constitutes a compromise. A compromise is valid only if there is a meeting of minds between the parties as to exactly what they intended at the time the compromise was reached. Wortham v. Fielder, 30,102 (La.App. 2nd Cir.4/8/98), 711 So.2d 399, 401, writ denied, 98-1254 (La.6/19/98), 721 So.2d 474. A compromise instrument is governed by the same general rules of construction applicable to contracts. Smith v. Walker, 96-2813 (La.App. 1st Cir.2/20/98), 708 So.2d 797, 802, writ denied, 98-0757 (La.5/1/98), 718 So.2d 418.
Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. When the words of a contract are clear and explicit *672 and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046. The words of a contract must be given their generally prevailing meaning. LSA-C.C. art. 2047. Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. LSA-C.C. art. 2051. LSA-C.C. art. 3073 contains a supplementary rule of construction governing the interpretation of the operative language, and the determination of the scope, of a compromise agreement. Article 3073 provides that a compromise agreement extends only to those matters that the parties expressly intended to settle and that the scope of the transaction cannot be extended by implication. Robinson v. Robinson, 99-3097 (La.1/17/01), 778 So.2d 1105, 1121-22.
In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation. Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party, whether obligee or obligor. LSA-C.C. art. 2057. Ambiguous clauses are construed against the drafter of the contract. See LSA-C.C. art.2056.
With these principles regarding the interpretation of contracts in mind, we note that USAA's offer of judgment stated, "This offer is for $250,000.00 and is exclusive of all costs, interest, attorney fees, and any other amount which may be awarded pursuant to statute, rule, or stipulation." In compliance with LSA-C.C.P. art. 970, USAA seemingly specified the total amount of money of the settlement offer  $250,000. In accordance with Article 970, USAA further provided that this amount was exclusive, as opposed to inclusive, of certain enumerated items, that is, "all costs, interest, attorney fees, and any other amount which may be awarded." Had its offer been inclusive of these items, USAA would have been obligated to pay the stated settlement amount of $250,000 and no more or less. However, "exclusive of all costs, interest, attorney fees, and any other amount which may be awarded" means that costs, interest, attorney fees, and any other amount which may be awarded will be over and above the total amount of the settlement offer of $250,000. See Nichols v. Alonzo, 575 So.2d 403, 404 (La.App. 4th Cir.), writ denied, 577 So.2d 3 (La.1991). Therefore, by use of the word "exclusive," we conclude that "any other amount which may be awarded pursuant to statute, rule, or stipulation" means any additional award to which Crawford might be entitled, beyond the total amount of money of the settlement offer, plus costs, interest, and attorney fees. To hold otherwise would defeat the purpose behind Article 970's mandate to specify whether the settlement offer is inclusive or exclusive of such award items.
USAA asks this court to conclude differently based on the inclusion of the term "stipulation" into its offer of judgment, apparently referencing the joint stipulation made by the parties on March 7, 2003, in connection with the motions to compel and to designate an order for trial. That stipulation expressly states that Crawford's penalty and attorney fee awards would be based on specified percentages applied to "any damage awarded";[6] however, the *673 penalties and attorney fees were to be calculated on the final award to Crawford from each accident after the stipulated past credits were applied.[7]
In light of the offer of judgment, Crawford never received a "damage award" as contemplated by the stipulation; instead, the parties agreed on a total amount of money in the settlement offer, as required by Article 970. The "amount . . . awarded pursuant to . . . stipulation," as stated in USAA's offer of judgment, was in reference to the five percent penalty award and the twenty percent attorney fee award that was over and above the total amount of money of the settlement offer. Article 970 expressly requires specificity as to the exclusiveness or inclusiveness of enumerated items, including "any other amount which may be awarded pursuant to statute or rule." To conclude that USAA intended that the $250,000 offer would be reduced by the credits of $55,000 for the 1994 accident and $105,000 for the 1995 accident would create an ambiguity and render the specificity requirement meaningless. As drafter of the offer of judgment, such an ambiguity must be interpreted against USAA. See LSA-C.C. art.2056; Carter v. Financial Advisor & Consultant, Inc., 444 So.2d 646, 649 (La.App. 1st Cir.1983), writ denied, 446 So.2d 313 (La.1984).
The correspondence between the parties' counsel immediately following Crawford's acceptance of the offer of judgment further demonstrates this ambiguity. USAA initially took the position that Crawford was entitled to a flat amount of $250,000. Crawford's response was that their settlement agreement contemplated $250,000 as the starting point, as evidenced by the use of the term "exclusive" in USAA's offer. To Crawford's response, USAA urged a misinterpretation of the offer of judgment, as USAA had only authorized $250,000 as the total sum of the settlement. In light of the "misinterpretation," USAA's recommendation was that the matter proceed to trial if Crawford were unwilling to settle for an even $250,000.
In a follow-up to this correspondence, a letter dated April 11, 2003, from counsel for Crawford indicated that further communication had occurred between counsel via telephone. This letter revealed that during their telephone conversations, USAA's counsel had written USAA's offer of judgment as he had intended, that is, $250,000, plus interest, plus penalties, plus attorney fees, plus costs. Subsequent to Crawford's acceptance, USAA's counsel learned that the representative of USAA with whom he had been dealing had misunderstood the explanation and had only $250,000 in settlement authority. The April 11, 2003 letter also disclosed that counsel for Crawford had learned for the first time on April 10, 2003, that USAA intended the $250,000 offer of judgment was to be reduced by the credit amounts stated in the November 6, 2002 judgment of the trial court. These communications are not disputed by USAA.
Applying the codal rules of construction providing that a compromise agreement extends only to those matters that the parties expressly intended to settle and that the scope of the transaction cannot be extended by implication, courts are guided by the general principle that the *674 contract must be construed as a whole and in light of surrounding events and circumstances. Thus, the intent which the words of the compromise instrument express  in light of the surrounding circumstances at the time of execution of the agreement  is controlling. Robinson, 778 So.2d at 1122. In light of the surrounding events and circumstances, we conclude that the trial court erred in finding that USAA was entitled to reduce the total amount of money of the settlement offer by the previously determined credits. Had USAA intended such a result, it should have worded its offer of judgment to clearly provide that the total amount of money of the settlement offer would be reduced by the credits.

Decree
For the foregoing reasons, the judgment of the trial court granting United Services Automobile Association's motion for judgment is reversed, and judgment is rendered on the offer of judgment in favor of John Felder Crawford, II, granting his motion for judgment and ordering United Services Automobile Association to pay to John Felder Crawford, II the following: (1) $250,000; (2) $12,500 in penalties; (3) $52,500 in attorney fees; and (4) legal interest and costs. Costs of this appeal are assessed to United Services Automobile Association.
REVERSED AND RENDERED.
NOTES
[1] The driver at fault in the first accident was uninsured, and the driver at fault in the second accident was underinsured.
[2] The January 23, 2003 letter agreement from counsel for USAA to counsel for Crawford set forth the parties' agreement relative to Crawford's pending claim for penalties and attorney fees, and was incorporated into the joint stipulation filed on March 7, 2003. The letter agreement detailed how the calculation of penalties and attorney fees was to be made and presented a sample calculation. Provision D of the letter agreement provides, in pertinent part:

Essentially, once a verdict is rendered the credit would be applied to that verdict amount. The amount of the verdict minus the credit would then include penalties of 5% and then attorney fees of 20% would be applied to the verdict plus the penalty of 5%. Penalties and attorney fees are applied to any verdict up to the policy limits of $1.3 million for each accident minus credits. An example of the calculation to be applied would be as follows:
Assume there is a $100,000.00 award for John Crawford on the 1994 accident. USAA would receive a credit of $55,000.00, leaving a total of $45,000.00. Penalties would then be applied of 5% equaling $2,250.00. That would then render a total of $47,250[.00] and attorney fees of 20% would be calculated on that amount which would total $9,450.00. That means for a verdict of $100,000.00 for the first accident, judgment would be entered for Crawford in the amount of $56,700.00 (resulting in payment of that amount plus legal interest).
[3] $250,000 settlement offer minus $55,000 credit for payment towards the 1994 accident minus $105,000 credit for payments toward the 1995 accident = $90,000.
[4] $90,000 x 5% = $4,500; ($90,000 + $4,500) x 20% = $18,900; $90,000 + $4,500 + $18,900 = $113,400.
[5] $250,000 x 5% = $12,500; ($250,000 + $12,500) x 20% = $52,500; $250,000 + $12,500 + $52,500 = $315,000.
[6] Were it not for this stipulation, penalties and attorney fees would have been determined by the court after a contradictory rule.
[7] Further evidence that the parties contemplated calculation of the penalty and attorney fee awards after a trial can be found in that part of the stipulation which stated the "post-verdict" calculations were to be performed in accordance with the January 23, 2003 letter agreement referred to in footnote 2 of this opinion.