PAUL A. BONIN, Judge.
 

 11 Alton Cotton, Jr., sued his employer, Delta Queen Steamboat Company, Inc. (Delta Queen), claiming that while working aboard the riverboat vessel DELTA QUEEN he was injured in the course of offloading the ship’s garbage up a levee. Claiming that he slipped and fell, hurting his back, he sought damages under the Jones Act
 
 [1]
 
 and the general maritime law as well as the maintenance and cure due him as a seaman.
 

 Initially paying Mr. Cotton maintenance and cure, Delta Queen after further investigating the alleged incident and Mr. Cotton’s conduct during his brief employment before the unwitnessed incident, denied Mr. Cotton’s claim. Delta Queen terminated his maintenance and cure based upon medical records and evidence of preexisting back pain not disclosed to Delta Queen when Mr. Cotton entered its employ; evidence of his drug dependence and drug-seeking activities; contradictory medical histories; and an array of evidence suggesting that Mr. Cotton was less than credible regarding his past medical history and his alleged slip and fall.
 

 RNot only did Delta Queen deny the allegations of Mr. Cotton’s petition, it also filed a reconventional demand seeking to recover sums spent in providing maintenance and cure to Mr. Cotton, as well as attorneys’ fees and costs, based upon Mr. Cotton’s alleged material misrepresentations during his hiring process and his misconduct while he was receiving maintenance and cure.
 

 Pursuant to La. C.C.P. art. 970, Delta Queen made an offer of judgment to Mr. Cotton which he refused. The case proceeded to a bench trial. After hearing and observing the plaintiffs and other witnesses’ testimony and reviewing documentary evidence, the trial court entered judgment dismissing with prejudice all of Mr. Cotton’s claims. The trial court judgment was silent as to the disposition of Delta Queen’s reconventional demand. Following the trial court’s action, Delta Queen filed a motion for judgment, seeking to enforce its offer of judgment. The trial court denied the motion.
 

 Both parties appealed from the judgment on the merits. Delta Queen additionally appealed the denial of its motion on the article 970 issue. After full review of the record, we affirm the judgment of the trial court for the reasons which follow.
 

 I
 

 Mr. Cotton assigns a single error to the trial court: the failure to award mainte
 
 *265
 
 nance and cure.
 
 [2]
 
 In
 
 Vaughan v. Atkinson,
 
 369 U.S. 527, 531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), the United States Supreme Court stated:
 

 Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship’s service; and it extends during the period when he is incapacitated to |3do seaman’s work and continues until he reaches maximum medical recovery.
 

 The trial judge, Mr. Cotton argues, committed manifest error in making an adverse credibility determination about him especially and in her other credibility determinations about the other witnesses along with her assessment of the documentary evidence, including medical records. In her Reasons for Judgment, the trial court specified her reasons for finding Mr. Cotton lacking in credibility: Mr. Cotton failed to disclose that he had treated earlier with Dr. Giambelluca for severe, chronic back pain; he failed to tell Dr. Giambellu-ca about the alleged event while working for Delta Queen; Mr. Cotton had a longstanding drug addiction problem; the fact that this was an unwitnessed accident; Mr. Cotton’s fellow seamen, who no longer work for Delta Queen, testified that Mr. Cotton never pushed a garbage container up a ramp at the Helena, Arkansas port or any other port; Mr. Cotton never told the Human Resources Coordinator aboard the Delta Queen about the alleged accident, although he did complain about a cold and his rate of pay; without Dr. Phelan’s knowledge, Mr. Cotton treated at Integrity Pain Clinic and Global Pain Clinic and received astonishing numbers of pain relieving drugs such as Oxycontin, Lortab, Soma and Xanax; and Mr. Cotton disliked the work on the Delta Queen and planned to quit after his first hitch.
 

 Because Mr. Cotton claimed to have suffered injury in an unwitnessed accident, the trial judge had an intensified duty to examine the testimony and evidence to determine whether, in fact, she believed that an injury-causing accident even occurred. The trial judge could reasonably conclude based on the testimony of Mr. Cotton’s fellow shipmates and company employees that Mr. Cotton had duties which encompassed handling the ship’s garbage, but the particulars of the alleged accident — moving a container of garbage (weighing approximately 250 |4pounds) uphill up a levee along the Mississippi River, and the loaded container pushing Mr. Cotton backward, making him fall — strained the credulity of the trial judge. Among all the witnesses called by both parties, not one corroborated Mr. Cotton’s account of his accident. To counter the self-serving claims of Mr. Cotton, other ship employees heard him complaining about his work, saying he was going to quit when the ship returned to home port, and complaining about back pain.
 

 The propensity to lie or behave in a drug-seeking manner, and to manipulate medical care was a tapestry of prior and relevant behavior on which was woven the accident claim. Mr. Cotton had addiction to medication; he had a previous lumbar injury for which he received medical treatment and medication, which condition he failed to report when he was hired by Delta Queen. His subterfuge, or omission of this pertinent information, when added to his behavior regarding the alleged back injury which is the subject of this litigation, created a pattern of deception which the trial judge could reasonably have be
 
 *266
 
 lieved included a false claim of sustaining a work-related accident which indeed provided Mr. Cotton medical care, medications, and an alternative to regular employment.
 

 The burden to prove that a work-related accident occurred is heavier when it is unwitnessed.
 

 In
 
 Bruno v. Harbert International, Inc.,
 
 593 So.2d 357, 361 (La.1992), our Supreme Court held that a worker’s testimony may be sufficient to discharge his burden of proving a work-related accident by a preponderance of the evidence, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident.
 

 Lewis v. River City Construction,
 
 01-2100, p. 5 (La.App. 4 Cir. 4/17/02), 816 So.2d 906, 909 (wherein the trial judge, stating that inconsistencies cast serious doubt on the claimant’s credibility as to an unwitnessed accident, held that the claimant | ¡¡failed to prove that an accident occurred and that an accident resulted in injury and disability to him).
 
 [3]
 

 The trial court’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error.
 
 Lewis, supra,
 
 01-2100 at pp. 4-5, 816 So.2d at 909.
 

 Similarly, the Second Circuit in
 
 Webert v.
 
 Assoc.
 
 Indem. Corp.,
 
 330 So.2d 331, 334 (La.App. 2 Cir.1976), affirming the trial court’s conclusion of fact and rejection of the plaintiffs demands because she either failed to prove the occurrence of the alleged accidents or failed to prove her injury resulted from the relatively minor incidents, stated:
 

 The conclusion[sic] of the trial judge necessarily were based on a lack of credibility of plaintiffs testimony. There are inconsistencies and contradictions in the testimony of the witnesses tending to discredit plaintiffs account of the alleged accidents.... With evidence in the record tending to discredit plaintiffs testimony about the unwitnessed accidents, we find no manifest error.
 

 The testimony of co-workers and medical experts in the
 
 Webert
 
 case “cast doubts on plaintiffs credibility,”
 
 id.,
 
 just as evidence in the instant case cast doubt on Mr. Cotton’s credibility. Neither of the two elements of
 
 Bruno
 
 was met.
 

 This case epitomizes the challenge to the finder of fact when an alleged accident is unwitnessed and numerous divergences appear in the evidence both direct and circumstantial.
 

 In a civil case, the plaintiffs burden to prove his case by a preponderance of the evidence can be met by direct or circumstantial evidence. If ... circumstantial evidence is relied upon, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes, (citations omitted).
 
 Lacey v. Louisiana Coca-Cola Bottling Co., Ltd.,
 
 452 So.2d 162, 164 (La.1984).
 

 | fiThe incident itself was questionable. Malcolm Demery, a deckhand, testified that Mr. Cotton never left the vessel on
 
 *267
 
 March 21, 22, or 23, 2003, or pushed the garbage off the vessel as Mr. Cotton described. Moreover, Mr. Cotton never told Mr. Demery of any accident or injury to his back while aboard the vessel. Peter Behrens, a fellow employee and watchman on the same shift as Mr. Cotton, testified that he saw Mr. Cotton push garbage containers from the garbage alley to the gangway, but not up the levee or off the vessel. He stated that Mr. Cotton complained three days before the alleged accident that his back hurt, he was homesick, and he did not like his job. Mate John Speed, Mr. Cotton’s supervisor, testified that Mr. Cotton never reported to him the incident involving pushing the garbage cube up the embankment, though he changed Mr. Cotton to lighter duty because of his complaints of back pain. Mr. Behrens, the ship watchman, traded posts with Mr. Cotton after Mr. Cotton complained of pain, and he saw Mr. Cotton moving containers of garbage, but not up the ramp.
 

 Carly Fabian, the human resources manager aboard the vessel, testified that Mr. Cotton complained of a cold and later complained about his rate of pay, but he never described an accident and injury— he wanted to see a doctor because of his cold. Linda Angelica, formerly a claims manager for Delta Queen, testified that when Mr. Cotton was sent to the Marine Medical Unit when the vessel docked in New Orleans, he was to be treated for a cold, on March 28, 2003. The records of that clinic noted complaints of cold for two weeks and back pain for two weeks. The alleged incident was to have occurred on March 22, six days before Mr. Cotton visited the Marine Medical Unit. The court considered all this conflicting and circumstantial evidence and drew inferences.
 

 [7The drug-seeking behavior of Mr. Cotton also influenced the trial judge’s determination that he was not credible.
 

 After review of the record, we find no manifest error and affirm the trial court’s judgment denying maintenance and cure. “[A] Court of Appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong.”
 
 Rabalais v. Nash,
 
 06-0999, p. 4 (La.3/09/07), 952 So.2d 653, 657. As the fact finder, the trial court could evaluate the demeanor of the witnesses and form its determination as to credibility of the plaintiff and witnesses.
 
 See Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). In this case, the trial court emphatically and unequivocally stated,
 

 This Court finds that Mr. Cotton is unworthy of belief. This Court does not believe that the event he described ever occurred, nor does this Court believe he was injured during his brief employment with Delta Queen.
 

 In
 
 Adams v. Rhodia, Inc.,
 
 07-2110, p. 10-11 (La.5/21/08), 983 So.2d 798, 806-807, our Supreme Court further explained:
 

 ... where the findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of fact. Indeed, whether the fact finder’s determination is based on its decision to credit the testimony of one of two witnesses, that finding can virtually never be manifestly erroneous.
 

 The Supreme Court has again recently explained the standard of review of such findings of fact:
 

 Significantly, the issue to be resolved is not whether the [finder of fact] was right or wrong, but whether its conclusion was reasonable. Thus, [an appellate] Court, after a full review of the record, may not reverse reasonable findings, even if we had weighed the evidence differently sitting as the trier of fact.
 

 
 *268
 

 Fontenot v. Patterson Insurance,
 
 09-669 (La.10/20/09), 23 So.3d 259, 266-67. There is no doubt that a reasonable fact finder could conclude that |sMr. Cotton was not due any maintenance and cure for a nonexistent work-related accident with ensuing injury. Moreover, there is nothing in the record to support that Mr. Cotton did not receive sufficient payment of maintenance and cure for his physical illness (i.e., his cold) which manifested itself while in the vessel’s service. Accordingly, the trial judge’s factual determination and conclusion that no further maintenance and cure beyond what was paid to Mr. Cotton was due him is a reasonable one. The trial judge did not commit any error in dismissing with prejudice Mr. Cotton’s claim for maintenance and cure.
 

 II
 

 Delta Queen appealed the trial court’s failure to rule in its favor on its reconven-tional demand
 
 [4]
 
 and to award Delta Queen reimbursement or restitution of the sums for maintenance and cure it previously paid to or for the benefit of Mr. Cotton.
 
 [5]
 
 As noted earlier, the trial court judgment was silent as to any disposition of Delta Queen’s reconventional demand.
 

 Our law holds that the absence of written adjudication of a litigated issue is construed to mean that the claim is rejected. The Louisiana Supreme Court in
 
 Sewell v. Argonaut Southwest Ins. Co.,
 
 362 So.2d 758, 760 (La.1978) held that:
 

 A demand, may also be implied rejected by the silence of a judgment which fails to grant the demand,
 
 provided that the matter has been actually litigated and finally adjudged so that it became an “object of the judgment.” (emphasis added)
 

 In
 
 R.G. Claitor’s Realty v. Juban,
 
 391 So.2d 394, 398 (La.1980), the Louisiana Supreme Court reiterated that principle:
 

 Our jurisprudence has rested on a solid foundation the rule that all the issues presented by the pleadings, and on which evidence has been offered, will be considered as disposed of by a final | ¡judgment in the cause, and that
 
 demands passed over in silence must be considered as rejected in the absence of a special reservation,
 
 [citations omitted], (emphasis added)
 

 See also City of Eunice v. Credeur,
 
 02-188, p. 3 (La.App. 3 Cir. 10/09/02), 828 So.2d 710, 712;
 
 Lowe v. Prejean,
 
 540 So.2d 436, 438 n. 2 (La.App. 1 Cir.1989).
 
 [6]
 
 Because the trial court’s written judgment implicitly dismissed the reconventional demand with prejudice, Delta Queen is entitled to an appeal of that judgment. La. C.C.P. arts. 1911, 2082 and 2083 A.
 

 Delta Queen has, however, cited no authority — and we know of none-for the proposition, necessary to its contention, that it is entitled to restitution from a seaman for maintenance and cure payments which it unnecessarily paid to him or on his behalf.
 
 [7]
 
 As recently as 2005, the
 
 *269
 
 federal Fifth Circuit characterized such a proposition as
 
 res nova. Patterson v. Allseas USA,
 
 145 Fed.Appx. 969, 971 (5th Cir.2005).
 
 [8]
 

 We look to the jurisprudential precedents and the philosophical premises underlying maintenance and cure. The United States Supreme Court in
 
 Vella v. Ford Motor Co.,
 
 421 U.S. 1, 3-4, 95 S.Ct. 1381, 43 L.Ed.2d 682 (1975), described
 

 [t]he shipowner’s ancient duty ... deriving] from the “unique hazards (which) attend the work of seamen,” and foster[ing] the “combined object of encouraging marine commerce and assuring the well-being of seamen.” [citations omitted] [T]he duty arises irrespective of the absence of shipowner negligence and indeed irrespective of whether the illness or injury is suffered in the course of the seaman’s employment [citations omitted.]
 

 | inDelays, uncertainty, “contention” and “litigation” would result were maintenance and cure not an assured benefit to seamen, as the United States Supreme Court noted in
 
 Farrell v. United States,
 
 336 U.S. 511, 516, 69 S.Ct. 707, 93 L.Ed. 850 (1949), quoted in
 
 Vella, supra,
 
 421 U.S. at 4, 95 S.Ct. 1381:
 

 Denial of maintenance and cure when the seaman’s injury ... is not medically diagnosed as permanent until long after its occurrence would obviously disserve and frustrate the “combined object of encouraging marine commerce and assuring the well-being of seamen.” A shipowner might withhold vitally necessary maintenance and cure on the belief, however well or poorly founded, that the seaman’s injury is permanent and incurable. Or the seaman, if paid maintenance and cure by the shipowner, might be required to reimburse the payments, if it is later determined that the injury was permanent immediately after the accident. Thus uncertainty would displace the essential certainty of protection against the ravages of illness and injury that encourages seamen to undertake their hazardous calling.
 

 We are aware of the federal court decision in
 
 McCorpen v. Central Gulf Steamship Corp.,
 
 396 F.2d 547, 548-549 (5th Cir.1968), which sets forth the factual circumstances which can give rise to the
 
 denial
 
 of maintenance and cure:
 

 Maintenance and cure is a contractual form of compensation given by general maritime law to a seaman who falls ill while in the service of his vessel.... [T]here is a general principle that it will be denied where he knowingly or fraudulently conceals his illness from the shipowner, [citations omitted] In cases involving a pre-existing illness or other disability, the courts have made a distinction between nondisclosure and concealment.... [W]here the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure.... [T]he defense that a seaman knowingly concealed material medical information will not prevail unless there is a causal link
 
 *270
 
 between the pre-existing disability that was concealed and the disability incurred during the voyage, [citation omitted].
 

 In fact, in this very case, a partial summary judgment was granted in favor of Delta Queen,
 
 denying
 
 Mr. Cotton cure for the bills of certain physicians, which |n summary judgment was supported by the
 
 McCorpen
 
 decision.
 
 [9]
 
 Similarly, the federal Fifth Circuit has
 
 denied
 
 maintenance and cure benefits on the grounds of material intentional misrepresentation or concealment of medical facts.
 
 See Brown v. Parker Drilling Offshore Corp.,
 
 410 F.3d 166 (5th Cir.2005). However, these and other decisions
 
 [10]
 
 cannot be construed as authority that a cause of action exists for an employer to claim
 
 restitution
 
 of maintenance and cure payments from a seaman.
 

 “[T]he failure to disclose a cause of action ... may be noticed by either the trial or appellate court on its own motion.” La. C.C.P. art. 927 B.
 
 See also Talley v. Hughes,
 
 481 So.2d 172, 175 (La.App. 4 Cir.1985);
 
 Bradbury v. Paul,
 
 365 So.2d 845, 848 (La.App. 4 Cir.1978);
 
 Duke v. Gregory-Salisbury & Co.,
 
 205 So.2d 858, 862 (La.App. 4 Cir.1967) (“The failure to disclose a cause of action may be noticed by an appellate court where the court feels that an exception based on that ground should be maintained.”);
 
 Thompson v. Pardue,
 
 401 So.2d 497, 499 (La.App. 2 Cir.1981) (“Acting pursuant to that authority [i.e., to notice the exception
 
 sua sponte
 
 ], we supply the exception of no cause of action and rule that plaintiffs’ suit should be dismissed on that ground.”). We must presume all factual allegations of the reconventional demand to be true and all reasonable inferences to be made in favor of Delta Queen.
 
 See Doe v. Jo Ellen Smith Medical Foundation,
 
 05-0653, p. 1 (La.App. 4 Cir. 7/13/05), 913 So.2d 140, 142.
 

 h;.We now hold that Delta Queen has no cause of action against Mr. Cotton, a seaman, for restitution of maintenance and cure payments already made. Therefore, the trial court’s judgment
 
 sub silentio,
 
 effectively dismissing Delta Queen’s recon-ventional demand with prejudice, is correct as a matter of law.
 

 Ill
 

 Delta Queen also appeals the trial court’s denial of its motion for costs of litigation subsequent to its offer of judgment made pursuant to La. C.C.P. art. 970. The trial court correctly denied Delta Queen’s motion for judgment on its offer of judgment. La. C.C.P. art. 970 C, which is modeled on Fed.R.Civ.P. 68,
 
 [11]
 
 provides in pertinent part:
 

 
 *271
 
 If the final judgment
 
 obtained by the plaintiff-offeree
 
 is at least twenty-five percent less than the amount of the offer of judgment made by the defendant-offeror or if the final judgment
 
 obtained against the defendant-offeree
 
 is at least twenty-five percent greater than the amount of the offer of judgment ... the offeree must pay the offeror’s costs .... (emphasis added)
 

 The United States Supreme Court in
 
 Delta Air Lines, Inc. v. August,
 
 450 U.S. 346, 352, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981), narrowly and literally interpreted Fed.R.Civ.P. 68 as not applying to “a case in which judgment is entered against the plaintiff-offeree and in favor of the defendant-offeror.”
 
 [12]
 
 The words “in favor of the defendant-offeror” clearly apply “only to offers made by the defendant and only to judgments obtained by the plaintiff.” The rule is “simply inapplicable to” a case in which “the defendant ... obtained the judgment.”
 
 Id.
 

 118[I]t does not apply to judgments in favor of the defendant or to judgments in favor of the plaintiff for an amount greater than the settlement offer.... Thus unless we assume that the Federal Rules were intended to be biased in favor of defendants, we can conceive of no reason why defendants-and not plaintiffs-should be given an entirely risk-free method of denying trial judges the discretion that Rule 54(d) confers regardless of the outcome of the litigation.
 
 Id.
 
 at 354-55,101 S.Ct. 1146.
 
 [13]
 

 See also La. Power & Light Co. v. Kellstrom,
 
 50 F.3d 319, 333-34 (5th Cir., 1995) (“If a plaintiff takes nothing ... Rule 68 does not apply.... [T]he rule is not applicable when a defendant actually prevails over the plaintiff’).
 
 See also Louisiana Power & Light Co. v. Fischbach and Moore, Inc.,
 
 1992 WL 329489, p. 2 (E.D.La.1992);
 
 Carino v. Walmart La., LLC,
 
 2007 WL 977553, pp. 1-2 (W.D.La.2007) (“Both the United States Supreme Court and the Fifth Circuit Court of Appeal have held that Rule 68 does not apply when the plaintiffs do not obtain a judgment against the offering defendant, but
 
 *272
 
 rather a verdict is entered in favor of the defendant.[citations omitted].”)
 

 La. C.C.P. art. 970 “is punitive in nature and therefore must be strictly construed.”
 
 Crawford v. United Service Auto. Ass’n.,
 
 03-2117, p. 5 (La.App. 1 Cir. 3/24/05), 899 So.2d 668, 671. There is no basis for us to apply the provisions of article 970 C more broadly or leniently than the United States Supreme Court applies rule 68. Accordingly, the trial court’s judgment correctly rejected Delta | uQueen’s demand for its post-offer litigation costs because Delta Queen had actually prevailed over Mr. Cotton.
 

 IV
 

 In conclusion, the trial court did not commit manifest error in its factual findings, which are reasonable and which result in a dismissal of Mr. Cotton’s outstanding claims for further maintenance and cure. Moreover, Delta Queen’s reeon-ventional demand failed to state a cause of action against Mr. Cotton and, therefore, is properly denied with prejudice.
 
 [14]
 
 Finally, the trial court was correct in denying relief on Delta Queen’s demand arising from its offer of judgment pursuant to La. C.C.P. art. 970.
 

 The judgments of the court below are, therefore, affirmed in all respects.
 

 AFFIRMED.
 

 [1]
 

 . 46 U.S.C. § 30104.
 

 [2]
 

 . Mr. Cotton did not seek appellate review of his seaman claims for general damages under the Jones Act and the general maritime law by assignment of error.
 
 See
 
 Rule 1-3, Uniform Rules of the Courts of Appeal.
 

 [3]
 

 . Lewis' claim was for workers compensation benefits, for which the burden of proof is a preponderance of the evidence.
 
 Lewis, supra
 
 at p. 4, 816 So.2d at 909;
 
 Millon v. Clarion Hotel,
 
 98-0002, p. 3 (La.App. 4 Cir. 9/16/98), 719 So.2d 568, 570.
 

 [4]
 

 . La. C.C.P. art. 1061 B provides in pertinent part: “The defendant in the principal action ... shall assert in a reconventional demand all causes of action that he may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action.”
 

 [5]
 

 . Delta Queen also filed a motion for new trial on this issue which was denied.
 

 [6]
 

 . These cases are based in the application of civilian res judicata principles codified at La. R.S. 13:4231.
 

 [7]
 

 .
 
 See Kirk v. Allegheny Towing, Inc.,
 
 620 F.Supp. 458, 462-463 (W.D.Pa.1985) ("Many courts have permitted set off where a seaman received equivalent coverage from another source, but we have discovered no cases where actual restitution of maintenance and cure was required of the seaman.... Requiring reimbursement of the maintenance and
 
 *269
 
 cure by third party tortfeasor is quite different from requiring the seaman personally to repay money received as maintenance and cure. Reimbursement by a third party causes no hardship to the seaman who has probably already spent the money dispensed by his employer to pay off medical bills.”)
 

 [8]
 

 . This is an unpublished decision. The federal appeals court declined on the state of the record to reverse the district court’s dismissal of the vessel owner's counterclaim seeking restitution.
 

 [9]
 

 . The trial court dismissed with prejudice Mr. Cotton's claims for cure as they pertained to Dr. Giambelluca, Dr. Celestine, and Global Pain Management, LLC. The trial court did not designate this partial summary judgment as final.
 
 See
 
 La. C.C.P. art. 1915 B(l). Mr. Cotton has not assigned any error to this partial summary judgment and we cannot review that judgment. Rule 1-3, Uniform Rules of the Courts of Appeal.
 

 [10]
 

 . For example,
 
 Johnson v. Cenac Towing, Inc.,
 
 544 F.3d 296, 301 (5th Cir.2008) in which the court elaborated on the effects of a
 
 McCorpen
 
 defense, distinguishing them depending upon whether the seaman's claim is for maintenance and cure or for Jones Act damages.
 

 [11]
 

 .Fed.R.Civ.P. 68 at the time of the
 
 August
 
 case stated: "At any time more than 10 days before the trial begins, a party defending against a claim may serve on the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer....
 
 *271
 
 When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial....” Marek
 
 v. Chesny,
 
 473 U.S. 1, 14, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (Brennan, J., dissenting).
 

 [12]
 

 . Fed.RXiv.P. 68(d) now reads: "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.”
 

 [13]
 

 . In footnote 27 of
 
 August,
 
 the Supreme Court described the rarity of cases wherein defendants have sought to obtain their costs under Fed.R.Civ.P. 68:
 

 It was not until 1974 that any federal court even suggested that Rule 68 could be interpreted to apply to a case in which the defendant prevails.
 
 See Mr. Hanger, Inc. v. Cut Rate Plastic Hangers, Inc.,
 
 63 F.R.D. 607 (E.D.N.Y.1974).
 

 Apart from the case at bar and
 
 Mr. Hanger, Inc.,
 
 there are only two other reported cases in which a defendant attempted to recover his own costs under Rule 68 after obtaining a judgment in his favor. In
 
 Dual
 
 v.
 
 Cleland,
 
 79 F.R.D. 696 (D.D.C.1978), the court followed
 
 Mr. Hanger
 
 and reluctantly granted defendant an award of costs under Rule 68, after stating that it would not have allowed costs to defendant as the prevailing party under Rule 54(d). In
 
 Gay v. Waiters' and Dairy Lunchmen’s Union, Local No. 30,
 
 86 F.R.D. 500, 503-504 (N.D.Cal.1980), the court assumed that Rule 68 applied to prevailing defendants but refused to apply the Rule to impose costs on the named plaintiffs in a Title VII class action. The court noted that if Rule 68 applied in class actions, the disproportionate risk imposed on the class representatives would discouraged the filing of Title VII suits.
 

 [14]
 

 . Since the grounds for the objection cannot be removed by amendment, the reconventional demand is properly dismissed. La. C.C.P. art. 934.